**MASSEY SERVICES, INC., and Contract Assistance, Inc., Plaintiffs,**

v.

**James C. FLETCHER, Administrator, National Aeronautics and Space Administration, et al., Defendants.**

**No. 72556.**

United States District Court, N. D. California.

Sept. 1, 1972.

Allan J. Joseph, Diane D. Eames, Malcolm E. McLorg, Miller, Groezinger, Pettit & Evers, San Francisco, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an action by Massey Services, Inc. ("Massey") and Contracts Assistance, Inc. ("CAI") against several officials of both the National Aeronautics and Space Administration ("NASA") and the Small Business Administration ("SBA"), seeking to enjoin defendants from awarding the NASA-Ames Technical Library Contract, a procurement contract for the furnishing of technical library services at the Ames Technical Library at Moffet Field, California (hereinafter "Library Contract"). Defendants have arranged to award the Library Contract under the so-called § 8(a) program of SBA, whereby SBA will enter into the Library Contract with NASA and will, in turn, subcontract its obligations under the agreement to an eligible "small business concern." Plaintiffs challenge the proposed award on the grounds that it violates certain federal statutes, SBA's own regulations, and plaintiffs' constitutional rights.

BACKGROUND

Plaintiff Massey was originally awarded the Library Contract on May 29, 1969 in the ordinary course of NASA procurement (Hertzog affidavit, filed April 10, 1972) and has continued to perform on the contract until the present time.[1]

Anticipating the expiration of the contract, NASA officials commenced negotiations with SBA concerning the possibility of letting the Library Contract under the § 8(a) program of SBA, or, in the alternative, "setting aside" the procurement for bids by small business concerns only (Ryan affidavit, filed April

---

1. The contract was due to expire on May 31, 1972, but has remained in effect under this Court's order pending determination of plaintiffs' motion for a preliminary injunction.

10, 1972), and on March 16, 1972 published in "Commerce Business Daily" a "synopsis of proposed procurement" for the Library Contract indicating that the procurement would be "set-aside" for bids by small business concerns. (Hertzog affidavit, supra.)[2]

On March 22, 1972, however, the "synopsis of proposed procurement" was cancelled in a notice to the effect that the contract was being "negotiated" by SBA under § 8(a) of the Act. (Id.)

The record shows that SBA and NASA have since resolved to enter into the Library Contract under the § 8(a) program and, that Management Services Associates ("MSA"), a firm owned by a Mr. Lonnie Speight, has been selected by SBA as recipient of the subcontract award thereunder. (Ryan affidavit, filed April 10, 1972.)

The authority for the § 8(a) program of SBA is set forth in section 8(a) of the Small Business Act (15 U.S.C. § 637(a)),[3] which provides as follows:

"(a) It shall be the duty of the [SBA] and it is empowered, whenever it determines such action is necessary —

(1) to enter into contracts with the United States Government and any department, agency, or officer thereof having procurement powers obligating [SBA] to furnish articles, equipment, supplies, or materials to the Government. In any case in which the [SBA] certifies to any officer of the Government having procurement powers that [SBA] is competent to perform any specific Government procurement contract to be let by any such officer, such officer shall be authorized in his discretion to let such procurement contract to [SBA] upon such terms and conditions as may be agreed upon between [SBA] and the procurement officer; and

(2) to arrange for the performance of such contracts by negotiating or otherwise letting subcontracts to small-business concerns or others for the manufacture, supply, or assembly of such articles, equipment, supplies, or materials, or parts thereof, or servicing or processing in connection therewith, or such management services as may be necessary to enable [SBA] to perform such contracts."

The Small Business Act, in 15 U.S.C. § 632, defines a "small business concern" as "one which is independently owned and operated and which is not dominant in its field of operation," adding that "in addition to the foregoing criteria the Administrator [of SBA], in making a detailed definition, may use these criteria, among others: Number of employees and dollar volume of business."

SBA has by regulation 13 C.F.R. § 124.8–1 provided, in subpart (b), that "[i]t is the policy of SBA to use [§ 8(a)] authority to assist small concerns owned by disadvantaged persons to become self-sufficient, viable businesses capable of competing effectively in the marketplace . . ." and, in subpart (c), that "to be eligible for an 8(a) subcontract, a concern must be owned or destined to be owned by socially or economically disadvantaged persons . . ." and, further, that "this category often includes, but is not limited to black Americans, American Indians, Spanish Americans, Oriental Americans, Eskimos and Aleuts."

The record shows that MSA was selected by SBA as the prospective subcon-

---

2. Pursuant to SBA regulations 13 C.F.R. §§ 127.15 through 127.15–4, implemented under 15 U.S.C. §§ 634, 644, Government procurement contracts, upon agreement between SBA and the procuring Government agency, can be "set-aside" for bidding by small business concerns exclusively.

3. 15 U.S.C. § 637(a) (§ 8(a) of the Small Business Act) will be referred to herein as § 8(a) of the Act and the SBA program thereunder, the § 8(a) program; other pertinent statutory provisions will be referred to by U.S.Code citation.

tract awardee on the Library Contract since that firm was considered to be owned by a "socially or economically disadvantaged person." (MacPherson affidavit, filed April 10, 1972.) The reasons stated for this conclusion are that MSA has been unable to bid on other Government contracts due to its lack of bonding ability; that MSA has been unable to obtain credit through conventional sources; and, that, despite Mr. Speight's educational achievements, "he has been unable to obtain a profitable level of commercial business because of his ethnic origin." (Id.)

Plaintiffs' principal contention is that there is no authority in the Small Business Act or any other statute for SBA's restriction of § 8(a) program subcontract awards to "concerns owned by socially or economically disadvantaged persons" exemplified by the racial groups listed in the above regulation. Massey and CAI also contend that SBA's implementation of the program in this manner violates equal protection principles embodied in the Fifth Amendment in that it discriminates against white Caucasians.

Plaintiffs further challenge the program on the grounds that there is no authority under § 8(a) of the Act for SBA to enter into contracts for the furnishing of "services," such as the Library Contract, as opposed to contracts for "materials" or "supplies." Plaintiffs also argue that pre-selection of subcontract awardees under the program without competitive bidding violates the competitive bidding requirement contained in statutes governing ordinary Government procurements, 10 U.S.C. §§ 2303 and 2304.

Massey and CAI also complain that in this case SBA has violated certain regulations governing the § 8(a) program, i. e., 13 C.F.R. § 124.8–1(d)(1) and (2).

The threshold question, however, concerns plaintiffs' standing to raise the above issues.

## STANDING—MASSEY

Defendants contend that neither Massey nor CAI has standing to challenge SBA's implementation of the § 8(a) program since neither plaintiff is a "small business concern" under existing SBA criteria governing such status and, therefore, stands to suffer no injury as a result of defendants' actions, citing Ass'n of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Defendants also make the point that plaintiffs' position in this case is no better than that of a "disappointed bidder" on a Government contract, a posture in which standing to challenge the validity of a Government procurement has been traditionally denied (citing Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1946) and its progeny).

The criteria for qualification as a "small business Government subcontractor" are set forth (by reference in SBA regulation 13 C.F.R. § 121.3–12) in SBA regulation 13 C.F.R. § 121.3–8. Subsection (e) of that regulation, which governs eligibility for grants of subcontracts for "services" (such as the Library Contract), provides that a concern bidding for services is "classified as small if its average annual receipts for its preceding three (3) fiscal years do not exceed $1 million."

There is no question that Massey does not qualify as a "small business concern" under the foregoing criteria. Massey's gross receipts for fiscal year 1971 alone were in excess of $3.5 million and it follows, therefore, that Massey's average annual gross receipts in fiscal years 1969, 1970, and 1971 have exceeded $1 million. (Affidavit of Marcinek, filed April 10, 1972) Massey does not allege that it is a "small business concern," nor does it take issue with the Government's contention that it is not.[4]

4. In fact, the affidavit of William Massey, president of Massey, suggests that Massey is not eligible as a "small business concern:" "In the event that the intended procurement under Section 8(a) is withdrawn, and a small business set-

■■ Broadly stated, where a suing party does not rely on a particular statute authorizing invocation of the judicial process (as is the case here), the question of standing ". . . depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L. Ed.2d 947." Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Given the context of a challenge to federal agency action, the question of standing has been refined further to the question of whether plaintiff has suffered a sufficient "injury in fact" to an interest "arguably within the zone of interests to be protected or regulated" by the statute that the particular agency is claimed to have violated. Sierra Club v. Morton, supra, 405 U.S., at p. 733, 92 S.Ct. 1361; Ass'n of Data Processing Service Organizations, Inc. v. Camp, supra, 397 U.S., at p. 153, 90 S.Ct. 827.

■ Clearly, § 8(a) of the Act is designed to benefit "small business concerns" by improving their position in the Government contract marketplace vis-a-vis large or established firms. In accordance with § 8(a), SBA has limited § 8(a) program eligibility to "small business concerns" and, pursuant to 15 U.S. C. § 632, supra, has formulated a definition of such status in regulation 13 C.F. R. § 121.3–8(e), supra. Massey does not qualify as a "small business concern" under that definition, nor does it take issue with SBA's limitation of § 8(a) program benefits to such entities. Since Massey is not a "small business concern," its interests cannot be said to fall within the "zone of interests sought to be protected or regulated" by § 8(a) of

the Act or the regulations promulgated thereunder.

Since Massey does not qualify as a "small business concern," it would be ineligible for a § 8(a) subcontract *irrespective* of the validity of any further eligibility restrictions imposed by SBA (such as in regulation 13 C.F.R. § 124.8–1(c)) or of SBA's implementation of the program generally or in this particular case. Even assuming that this Court were to rule in Massey's favor on all substantive issues raised, and were to enjoin defendants from awarding a subcontract for the Library Contract to MSA or others on the grounds asserted by plaintiffs, Massey would nevertheless by ineligible to receive the subcontract. SBA would still limit § 8(a) subcontracts to "small business concerns," or, it could "set aside" the contract for bids by small business concerns only, as was originally proposed.

Massey, therefore, stands to suffer no injury, economic or otherwise, as a result of defendants' proposed action.

■ Massey argues that it will suffer injury if the Library Contract is let, since it desires to continue to perform on the contract following its expiration. Massey asserts no specific right to a renewal or extension of the contract, but simply cites the possibility of an extension of the agreement on an interim basis. Massey further contends that, should the Library Contract be "set aside" for small business concerns and the prices bid thereon be found to be unreasonable, NASA could then, pursuant to its own procurement regulations, open bidding on the contract to all businesses. Such speculative expectancies, however, without further substance, are insufficient to give plaintiff standing in this action.

STANDING—CAI·

■ Plaintiff CAI also lacks standing for similar reasons. It is not a "small business concern" within the meaning of

---

aside is not initiated, MASSEY intends to submit a bid on the Technical Library

Contract." Massey affidavit, filed March 28, 1972, at ¶ 10.

SBA regulations 13 C.F.R. §§ 121.3–8(e) and 121.3–12, supra.

Although CAI might, under ordinary circumstances, qualify as a "small business concern," its close affiliation with Massey deprives it of such status under SBA regulations. The record shows that the formation of CAI was encouraged by the president of Massey so that CAI could bid on the Library Contract and another Massey contract that had been "set aside" for small businesses. This was done to assure that Massey employees could continue their work on those contracts. (2d Massey affidavit, filed April 14, 1972.)

The record also shows that CAI was formed by Massey employees and that Barbara Vallejo and Marcella Marciano, both Massey employees currently performing work on the Library Contract, serve as President and Secretary of CAI, respectively. (See supplemental Vallejo affidavit, filed April 14, 1972) Barbara Vallejo currently holds the position of "Head Librarian" with Massey. (Affidavit of Marcinek, supra.)

SBA regulation 13 C.F.R. § 121.3–8 provides that a "small business concern for the purpose of Government procurement is a concern, *including its affiliates*, which . . . can further qualify under the criteria set forth in this section." (Emphasis added.) The further qualifications set forth in the regulation include, in subsection (e), the "gross receipts" standard applicable to § 8(a) "services" contracts, which we determined was not met by Massey. The regulation requires, therefore, that in determining whether a firm like CAI is an eligible "small business concern" it must be considered together with its "affiliates."

The term "affiliates" is defined in 13 C.F.R. § 121.3–2(a) as follows:

"Concerns are affiliates of each other when either directly or indirectly (1) one concern controls or has the power to control the other. . ."

SBA regulation 13 C.F.R. § 121.3–14, entitled "Interpretations," provides, in subpart (C)(6) that:

"A concern is considered as controlling or having the power to control another concern when one or more of the following circumstances are found to exist, and it is reasonable to conclude that under the circumstances, such a concern is directing or influencing, or has the power to direct or influence the operation of such other concern.

(i) *Interlocking management.* Officers, directors, *employees*, or principal stockholders of one concern serve as a working majority of the board of directors or *officers* of another concern." (Emphasis added.)

Massey and CAI have interlocking management in that Massey employees, Vallejo and Marciano, both serve as principal officers of CAI. Considering the purposes for which CAI was formed, as well as Ms. Vallejo's current position as "Head Librarian" for Massey under the Library Contract, it is reasonable to conclude that Massey is "directing" or "influencing" the operation of CAI and therefore controls CAI within the meaning of the above regulation. It follows, therefore, that Massey is an "affiliate" of CAI and that Massey's financial status must be included in determining whether CAI qualifies as a "small business concern."

As previously discussed, Massey is not a "small business concern." Its affiliation with CAI therefore precludes "small business status" for CAI and renders the latter ineligible for § 8(a) subcontracts.

Plaintiffs having failed to show that they have standing to bring this action, we conclude that there is no likelihood that plaintiffs will prevail on the merits and that, therefore, a preliminary injunction should be denied.

Having reached this conclusion, it is neither necessary nor would it be appropriate for this Court to express any

opinion as to the validity of SBA's § 8(a) program.

Accordingly, it is the order of this Court that plaintiffs' motion for a preliminary injunction is hereby denied.

The temporary injunction entered by this Court on April 20, 1972, is hereby vacated and all parties are directed to proceed diligently with the further prosecution of this action.