**CLEAN GIANT,**
**INCORPORATED, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 455–88C.**

United States Claims Court.

Feb. 7, 1990.

Clement Theodore Cooper, Washington, D.C., attorney of record, for plaintiff.

Scott Ray, Washington, D.C., with whom was Asst. Atty. Gen. Stuart E. Schiffer, for defendant. David M. Cohen, Director, Mary Mitchelson, Asst. Director, and Katherine A. Day, of counsel.

## OPINION

FUTEY, Judge.

This case is before the court on defendant's motion to dismiss pursuant to RUSCC 12(b)(1) for lack of subject matter jurisdiction. Plaintiff is seeking money damages in the amount of $1,632,265.00 for breach of contract. Defendant denies owing any sums to plaintiff and asserts that no contract or solicitation in the instant suit existed between the parties.

### Statement of Facts

In June 1984, plaintiff was selected by the Small Business Administration (SBA) to receive a subcontract award under Section 8(a) of the Small Business Act, codified at 15 U.S.C. § 637 (1982)[1] (Section 8(a) subcontract), to provide food services and supplies for an Air Force station in Cape Cod, Massachusetts. The section 8(a) subcontract had a termination date of September 30, 1987, with an option for two additional years at the election of defendant.

At the time that plaintiff was providing food services at the Air Force station, ITT Base Services Incorporated (ITT), was providing the operations and maintenance support services there pursuant to a contract with defendant. On August 13, 1987, the section 8(a) subcontract was modified. The time for performance was extended for three additional months. Prior to the expiration of the section 8(a) subcontract with plaintiff, defendant determined that food services were within the scope of ITT's

1. "This program is designed to develop the ownership of businesses by socially and economically disadvantaged individuals and to provide assistance to those businesses so that they can develop into independent firms capable of competing in the marketplace without special assistance from the government. One of the methods utilized in providing assistance under this program is a section 8(a) contract."
*Harris Systems Intern., Inc. v. United States,* 5 Cl.Ct. 253, 255 (1984) (citation omitted).

"Under an 8(a) program, SBA enters into a contract with a procuring agency ... to provide goods or services. SBA subcontracts these requirements to a participant in the 8(a) program. SBA then steps aside and permits the 8(a) contractor ... to negotiate directly with the procuring agency."
*OAO Corp. v. United States,* 17 Cl.Ct. 91, 93 (1989).
Despite plaintiff's assumption to the contrary, the SBA is not relevant in the instant suit since the subcontract at issue was not a product of any SBA activity.

contract and it requested that ITT submit two proposals for cafeteria style food service: one based upon the provision of three meals a day; and another based upon the provision of two meals a day.

ITT determined that it had the resources to provide two meals a day and estimated that it could do so over a 45–month period for a total price of $835,808.00. Additionally, although not required by defendant, ITT solicited requests for quotations (RFQ) for food service operation based upon three meals a day, in order to subcontract these duties (ITT subcontract). Plaintiff was the only firm that responded. In preparation for the submittal of the bid, plaintiff attended a bid conference on October 16, 1987, where it inquired about: (a) the amount of bond required; (b) whether a manager would be required; (c) food service management requirements; and (d) payment of billings. On October 19, 1987, plaintiff received a response to these questions. Thereafter, plaintiff proposed three meals a day for a 45–month performance period for the total price of $1,632,265.00.

ITT submitted to defendant two proposals: one for three meals a day based upon plaintiff's cost estimate; and another for two hot meals a day based upon its own cost estimate. Defendant decided upon supplying only two meals per day, and accepted the proposal of Base Services, Incorporated, of Colorado Springs, Colorado, a wholly owned subsidiary of ITT, to provide these meals. Consequently, ITT did not contract with plaintiff to perform any services. Therefore, when the section 8(a) three month subcontract extension between plaintiff and defendant terminated by its terms on December 31, 1987, ITT had a contract to perform the services originally performed by both itself and plaintiff.

On December 21, 1987, plaintiff filed a protest with the General Accounting Office (GAO), contesting in essence, defendant's decision not to exercise its option to renew the section 8(a) subcontract. Specifically, plaintiff claimed that the ITT subcontract should have originally been solicited by the SBA and also that the section (8) and the ITT subcontracts should not have been merged. The Office of the Comptroller General denied plaintiff's protest on March 17, 1988, and on April 18, 1988, plaintiff's request for reconsideration was denied.

On August 3, 1988, plaintiff filed a complaint in this court seeking money damages in the amount of $1,632,265.00. Plaintiff claims that there was a breach of contract, breach of express warranty, breach of implied warranty, and breach of implied covenants of good faith and fair dealing. On January 26, 1989, defendant filed a motion to dismiss. On February 16, 1989, plaintiff filed an opposition to defendant's motion to dismiss; defendant's reply thereto was filed on April 7, 1989.

*Discussion*

Jurisdiction

■ On a motion to dismiss for lack of subject matter jurisdiction, the court may decide for itself the factual issues pertinent to resolving jurisdiction. *Hedman v. United States*, 15 Cl.Ct. 304, 306 n. 2 (1988) (citations omitted). This is due to the court's obligation to assure itself that it has jurisdiction of an issue before addressing its merits. *Hambsch v. United States*, 857 F.2d 763, 765 (Fed.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989).

■ Plaintiff alleges jurisdiction under both the Contract Disputes Act (CDA), codified at 41 U.S.C. §§ 601–13 (1978), and the Tucker Act, codified at 28 U.S.C. § 1491(a)(1) (1982). First, this court will address the parties' CDA contentions.

Defendant claims that plaintiff does not meet the jurisdictional prerequisites to maintain an action under the CDA. The CDA is limited to claims by a "contractor" against the government. 41 U.S.C. §§ 605(a), 609(a)(1). "Contractor" is defined as "a party to a government contract other than the government." 41 U.S.C. § 601(4). This has been further interpreted to exclude subcontractors. *Universal Surety Co. v. United States*, 10 Cl.Ct. 794, 800 (1986), (citing *Balboa Insurance Co. v. United States*, 775 F.2d 1158, 1160 (Fed. Cir.1985); S.Rep. No. 1118, 95th Cong. 2d Sess. 16, *reprinted in* 1978 U.S.Code Cong.

& Ad.News 5235, 5250) ("Senate Report discusses the need for a single point of contact with the contracting officer in order to highlight the risk of allowing direct claims by subcontractors"). In the present case, the court finds that all of plaintiff's claims stem from its failure to be awarded the ITT subcontract. Plaintiff's status is that of a subcontractor. Therefore, this court does not have jurisdiction under the CDA to hear plaintiff's claims. Furthermore, as discussed *supra*, plaintiff presents an implied contract theory based upon its status as a disappointed bidder. This type of implied-in-fact contract theory cannot support a claim under the CDA. *Costal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir. 1983).

■ Assuming *arguendo*, that plaintiff was allowed to proceed forward here under the CDA, the record indicates that plaintiff failed to submit a properly certified claim for monetary damages to the contracting officer. It is not enough, as plaintiff alleges, that the contracting officer had "actual knowledge" of the claim. Plaintiff must abide by the CDA to obtain direct access to the Claims Court for review of its contract claims. Title 41 U.S.C. § 605(a) requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." In addition,

> [f]or claims of more than $50,000.00, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1).

In *Paragon Energy Corp. v. United States*, 645 F.2d 966, 971, 227 Ct.Cl. 176 (1981), the Court of Claims held that the proper submission of a claim is a jurisdictional prerequisite under the CDA. Here, plaintiff failed to have the claims certified and submitted correctly. Therefore, this court still does not have jurisdiction under the CDA for plaintiff's claims.

Accordingly, plaintiff's claims must be analyzed for possible Tucker Act jurisdiction.

*Express and Implied-in-Fact Contract Theories of Recovery*

■ In general, defendant argues that plaintiff's claims fail to show privity of contract between the parties. The elements that plaintiff is required to prove under an express contract claim are the same as those for an implied-in-fact contract; however, the nature of the evidence differs. *OAO Corp. v. United States*, 17 Cl.Ct. 91, 99 (1989) (citations omitted). Under either theory plaintiff must show a "mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the Government in contract ... [as well as] consideration ... for the alleged ... contract." *OAO Corp.*, 17 Cl.Ct. at 98–99 (citation omitted).

■ Plaintiff bases its express contract claim under the section 8(a) subcontract. Plaintiff asserts that defendant breached this subcontract by failing to advise that future food service contracts may omit the hot lunches requirement. Plaintiff does not show any express contractual obligation on the part of defendant to advise plaintiff of its food services requirements after December 31, 1987; therefore, the section 8(a) subcontract has no relevance to the bid plaintiff submitted to ITT. Accordingly, this express contract contention cannot support plaintiff's Tucker Act jurisdiction in this court.

■ Plaintiff's main argument under an implied-in-fact contract theory is based upon a characterization of itself as a disappointed bidder. Under this standard, defendant would have an implied contractual duty to fairly and honestly consider a bid tendered in response to a government solicitation. *See e.g., Keco Indus., Inc. v. United States*, 203 Ct.Cl. 566, 577, 492 F.2d

1200 (1974).[2] Plaintiff alleges that defendant's failure to advise of the possible deletion of hot lunches from its food service requirements caused plaintiff to overbid and lose the ITT subcontract. Specifically, plaintiff claims that it was told during the bid conference for the ITT subcontract to submit a bid as it had done with its section 8(a) subcontract; however, it was not informed that hot food services would be abolished and/or down-graded to box lunches. Plaintiff argues that if had it been informed of this critical fact, it may have submitted a lower bid.

The court finds that an implied-in-fact contract theory is inapplicable here. In this case, a contracting officer did not generate a request for a proposal, nor did plaintiff submit its proposal to defendant. Plaintiff had business dealings only with ITT and not with defendant. Because there was no action upon the part of defendant that could be construed as an offer, and, thus, no possible "meeting of the minds" between plaintiff and an authorized representative of defendant, plaintiff has failed to allege facts that it was a party to an implied-in-fact contract with the government, either under a "disappointed bidder" claim or otherwise. *Atlas Corp. v. United States*, 895 F.2d 745, 754, 755 (Fed.Cir. 1990); *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 750–51, 508 F.2d 817 (1974); *Ysasi v. Rivkind*, 856 F.2d 1520, 1525 (Fed.Cir.1988); *cf. Data Transformation Corp. v. United States*, 13 Cl.Ct. 165, 171–72 (1987). Therefore, an implied-in-fact contract contention cannot support plaintiff's Tucker Act jurisdiction in this court.

In general, plaintiff is under the mistaken impression that its claims involve the SBA and the section 8(a) subcontract. However, plaintiff's claims are based exclusively on the ITT subcontract which has no connection to the section 8(a) subcontract and/or the SBA. In addition, defendant did not solicit bids from plaintiff or other parties for the provision of food services. Instead, defendant requested a proposal

from ITT with whom it was under contract for the provision of related services. Finally, it is important to note that when the section 8(a) subcontract terminated, on December 31, 1987, defendant had no further duties to plaintiff. Consequently, plaintiff's contentions are erroneous.

Third Party Beneficiary Theory

■ Any argument by plaintiff that there is privity of contract because plaintiff is a third-party beneficiary of the contract between defendant and ITT is totally misplaced. "To entitle one to sue as a third-party beneficiary of a contract to which he is not a party, the contract must reflect the intent not merely to benefit the third-party but also to give him the direct right to compensation or to enforce that right against the promisor." *Baudier Marine Electronics v. United States*, 6 Cl.Ct. 246, 249 (1984), *aff'd*, 765 F.2d 163 (Fed.Cir. 1985) (citing *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912); *Robo Wash, Inc. v. United States*, 223 Ct.Cl. 693, 697–98 (1980); *Orchards v. United States*, 4 Cl.Ct. 601, 609–12 (1984), *aff'd*, 749 F.2d 1571 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); 4 A. CORBIN ON CONTRACTS 775 (1951)). Plaintiff does not allege any provision in the contract between defendant and ITT which would (1) allow plaintiff to enforce any rights against defendant, or (2) demonstrate any intent among the parties to benefit plaintiff. Accordingly, we hold that plaintiff cannot invoke this court's Tucker Act jurisdiction here as a third-party beneficiary.

Other issues raised by the parties need not be addressed here due to the disposition of the case based on the above findings.

*Conclusion*

For all the above reasons, plaintiff fails to come within this court's CDA and/or Tucker Act jurisdiction under principles applicable to both express and implied-in-fact

---

**2.** Recovery is limited to bid preparation expenses which do not include anticipatory prof-

its. *Keco Indus. Inc. v. United States*, 203 Ct.Cl. 566, 579, 492 F.2d 1200 (1974).

contract theories. Accordingly, defendant's motion to dismiss is granted.

The Clerk is directed to dismiss plaintiff's complaint. No costs.

IT IS SO ORDERED.