EASTERN CANVAS PRODUCTS,
INC., Plaintiff,

v.

Harold BROWN et al., Defendants,

and

Welmetco, Ltd., Intervenor-Defendant.

Civ. A. No. 76–1284.

United States District Court,
District of Columbia.

May 25, 1977.

Alan Y. Cole, Walter H. Fleischer, Alfred F. Belcuore, Cole & Groner, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Asst. U. S. Atty., Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., for defendants; Eric S. Benderson, Atty., Small Business Administration, of counsel.

G. Donald Markel, Washington, D. C., for intervenor-defendant.

## MEMORANDUM OPINION

WADDY, District Judge.

This is an action by a disappointed bidder seeking to enjoin the award to intervenor of two Defense Supply Agency (DSA) contracts under Solicitation Nos. DSA 100–76–B–0998 and DSA 100–76–B–1008, for the production of field pack frames and straps, and to require the defendants to award the contracts to plaintiff. Following this Court's denial of plaintiff's motion for preliminary injunction, the award of the contracts was stayed by our Court of Appeals pending disposition of the case on the merits. The action is now before the Court on defendants' motion to dismiss, treated pur-

suant to Federal Rule of Civil Procedure 12(b) as a motion for summary judgment, and plaintiff's cross-motion for summary judgment.

Plaintiff is Eastern Canvas Products, Inc. (Eastern), a Massachusetts corporation and a "small business" at the time of the filing of this action as defined in the Small Business Act, 15 U.S.C. § 632 and its implementing regulations, 13 C.F.R. § 121.3 *et seq.*[1] Eastern was the second lowest bidder on the two DSA solicitations.

Defendants are the Secretary of Defense, and officials at the DSA and the Small Business Administration (SBA), the agencies involved in the disputed contract awards. Each is sued in his official capacity.

Defendant-intervenor is Welmetco, Ltd. (Welmetco), a competitor of plaintiff and also a "small business" within the meaning of the Small Business Act. Welmetco was the low bidder on both DSA solicitations.

On December 14, 1975, the SBA determined that Welmetco was qualified to participate in and receive assistance under the SBA's section 8(a) Minority Subcontracting Program (the 8(a) program).[2] Pursuant to SBA regulations governing the 8(a) program, "[a]n applicant concern must be owned and controlled by one or more persons who have been deprived of the opportunity to develop and maintain a competitive position in the economy because of social or economic disadvantage." 13 C.F.R. § 124.8–1(c)(1). The purpose of the 8(a) program is "to assist small business concerns owned and controlled by socially and economically disadvantaged persons to become competitive in the market place." 13 C.F.R. § 124.8–1(b).

Under the section 8(a) program, the SBA negotiates with other departments and agencies of the Federal Government for procurement contracts which the SBA determines are suitable for performance by participating small businesses. An agreement is reached between the SBA and the department or agency as to the terms of the contract, including the price, and a prime contract entered into. The SBA then subcontracts with the participating small business. Such subcontracts may be awarded, as here, on a non-competitive basis.

Shortly after Welmetco was certified to participate in the 8(a) program, the SBA began negotiations with DSA and Welmetco for an 8(a) program subcontract award to Welmetco for the production of field pack frame and strap assembly units.

On April 15, 1976, an invitation for bids, DSA Solicitation No. 100–76–B–0998, was issued for procurement of 270,000 units of the same DSA field pack frame and strap units that were the subject of the Welmetco 8(a) program procurement negotiations. On April 19, 1976, an invitation for bids, DSA Solicitation No. 100–76–B–1008, was issued for delivery of some 303,566 pack strap units. Bids on these two solicitations were to be opened on May 5, and May 10, 1976, respectively.

The record indicates that Welmetco conveyed to the SBA its desire to bid competitively on the DSA 0998 solicitation, and urged the SBA to award to it the 8(a) program subcontract prior to the bid opening on May 5th.

On April 30, 1976, the SBA accepted DSA's estimated current fair market price of $21.88 per field pack frame and strap unit for the section 8(a) program subcontract.

An oral agreement was reached between the SBA and Welmetco, either on April 29 or April 30, 1976, that the unit price under the 8(a) subcontract would be $25.00. That agreement also provided that if Welmetco became the successful low bidder on the DSA 0998 competitive solicitation, the 8(a) subcontract unit price was to be reduced to either $21.88, or Welmetco's competitive bid, whichever was the higher.

---

1. At oral argument on the pending motions, plaintiff advised the Court that it was no longer a "small business" inasmuch as the number of its employees had recently increased beyond 500.

2. Authority for the 8(a) program is derived from Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a).

On the morning of May 5, 1976, the SBA announced that pursuant to the 8(a) program, Welmetco was being awarded a subcontract, DSA Contract No. 100–76–C–1379, for the production of 60,000 units of field pack frames, the unit price for which was to be dependent upon the results of the DSA 0998 competitive bidding as described above.

On that same day, in the afternoon, when the DSA 0998 solicitation bids were opened, Welmetco was found to have submitted the low bid at $18.13 per unit less two percent discount.[3] Eastern submitted the next lowest bid of $19.72—20.03 less two percent discount.

Because Welmetco as the successful low bidder on the DSA 0998 competitive contract, the unit price of the 8(a) program subcontract was automatically to be reduced from $25.00 to $21.88.

Also on May 5, 1976 the SBA authorized an advance payment of $200,000 to Welmetco on the 8(a) subcontract. On May 10, 1976, the DSA 1008 solicitation bids were opened and it was determined that Welmetco had the lowest bid of $4.22 per unit. Eastern was again the next lowest bidder at $4.23.

In September, 1976, the DSA Contracting Officer, Mr. Donald F. Sherry, determined that government furnished equipment would be provided to Welmetco for use under the 8(a) program subcontract because he felt Welmetco had "put SBA on notice that if they were to get the [8(a)] contract they needed the equipment and SBA proceeded to award a contract."[4] The existence of an oral commitment to provide such equipment was confirmed to Mr. Sherry by Mr. Leonard Sugrue, a contract negotiator in the SBA's New York office.

On September 28, 1976 the SBA authorized a Business Development Expense for Welmetco for the purchase of capital equipment.

Plaintiff Eastern contends that defendants used the 8(a) program to give special assistance to Welmetco in order to help it lower its bid on the DSA 0998 competitive solicitation, thereby providing Welmetco with immediate and distinct competitive advantage. According to plaintiff, this was accomplished through expediting the 8(a) program subcontract and awarding it at a unit price which, pursuant to an oral agreement, was contingent upon the result of the DSA 0998 competitive bidding, by orally agreeing to provide Welmetco with manufacturing equipment, and by making a commitment to give Welmetco a $200,000 special cash advance.

It is further contended that in order to expedite the 8(a) award, the following procedural irregularities took place: the usual SBA practice of preparing a written recommendation was by-passed; DSA was not given notification of the 8(a) subcontract award as required by the Armed Services Procedure Regulations (ASPR) § 1–705.-5(c)(1)(L); approval of the appropriate SBA official was not secured for the Business Development Expense which would have been necessary had the $25.00 per unit figure become the 8(a) subcontract price as required by SBA Standard Operating Procedures; and the SBA's certification that it was competent to perform the 8(a) contract was dated two days subsequent to, rather than prior to, the award as required by 15 U.S.C. § 637(a)(1).

These actions, plaintiff contends, constitute abuse of the 8(a) program, exceed statutory and regulatory authority, and constitute unequal treatment of bidders on a government contract. It is further contended that an award of the DSA contracts to Welmetco would violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the Fifth Amendment.

---

**3.** The record indicates that on May 3, 1976, Welmetco had submitted a bid of $26.50 per unit. On May 5, 1976, it submitted its revised (and winning) bid, dated May 4, 1976.

**4.** Sherry Deposition at 84–93, Attachment A to Plaintiff's Memorandum in Support of its Motion for Summary Judgment and in Further Opposition to Defendants' Motion for Summary Judgment.

Defendants contend that plaintiff has no standing to challenge the 8(a) program subcontract award and the alleged related procedural irregularities. They point out that the constitutionality of the 8(a) program and regulations was previously challenged and upheld in *Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696 (5th Cir. 1973) *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974), and assert that plaintiff is attempting to do indirectly what cannot be accomplished directly.

Defendants further contend that the objectives of the program are satisfied where, as here, an 8(a) program participant achieves a competitive position in the market place.

In *Ray Baillie Trash Hauling, Inc. v. Kleppe, supra,* the Court found that while plaintiff therein had standing to attack the statutory and constitutional authority of the SBA to establish the 8(a) program, it did not have standing to raise issues about alleged discrimination in the administration of the program because plaintiff had never applied for participation in the program and would not be directly affected by the outcome of the litigation.

The current controversy is distinguishable. In this case, it is apparent that the 8(a) subcontract award to Welmetco and the two DSA competitive contract solicitations are intertwined.[5] Eastern does not allege a loss of the 8(a) subcontract, nor does it seek award of *that* contract for itself.

Eastern is attacking the 8(a) award to Welmetco because of the manner in which that subcontract was let and the resultant impact upon two specific competitive contracts for which Eastern was found to have submitted the next lowest bids after Welmetco. Furthermore, a finding that defendants abused their authority and the program in awarding the 8(a) subcontract to Welmetco, thereby giving Welmetco special competitive advantage, is a prerequisite to a ruling by this Court that Eastern is

entitled to the ultimate relief it seeks—award of the two DSA contracts.

It is well established that a frustrated bidder has standing to challenge illegality in the award of a government contract to another bidder. *Scanwell Laboratories v. Shaffer,* 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

The Court therefore concludes that Eastern has more than a generalized interest in the fair administration of the 8(a) program, and has standing to challenge the awards of the 8(a) subcontract and the DSA competitive contracts to Welmetco.

Having determined that plaintiff has standing the Court must consider Eastern's contention that defendants abused the 8(a) program and acted outside their statutory and regulatory authority. It appears that plaintiff has scoured the record to compile a list of actions and alleged procedural irregularities which, when taken together, are asserted to amount to bestowing special competitive advantage for Welmetco.

The 8(a) program was established in order to help disadvantaged "small business concerns owned and controlled by socially or economically disadvantaged persons *to achieve a competitive position in the market place*".[6] 13 C.F.R. § 124.8–1(b). The constitutionality of the program was upheld in *Ray Baillie Trash Hauling, Inc. v. Kleppe, supra.* In so holding, the Court specifically observed:

> "The program may produce some inequalities among small business concerns as a class. But in the area of socio-economic legislation, the government's action must be upheld if it is rationally related to a proper government purpose." 477 F.2d at 709.

This reasoning was adopted by the Court of Appeals for this Circuit in *Valley Forge Flag Company, Inc. v. Kleppe,* 165 U.S.App. D.C. 182, 506 F.2d 243 (1974) wherein the Court observed that a plaintiff might find

5. This is most notably true with respect to DSA Solicitation No. 100–76–B–0998 and upon which plaintiff has concentrated its arguments.

6. Emphasis added.

itself receiving less business from the government than it would like because of the 8(a) program.

The record herein supports the conclusion that the 8(a) program subcontract award was expedited in order to help Welmetco participate in the competitive bidding on DSA Solicitation No. 100–76–B–0998. The expedition of the 8(a) award also affected the bidding on DSA Solicitation No. 100–76–B–1008.

It does not appear from the record, however, that defendants overstepped their authority or abused their discretion with respect to individual steps taken in expediting the award of the 8(a) subcontract to Welmetco. Rather, defendants were engaged in the expedited task of providing permissible assistance to Welmetco to help it achieve a competitive position in the market place. Plaintiff's allegations thus boil down to a question of timing.

That Welmetco was able to participate in the competitive bidding and submit low bids on both DSA Solicitations indicates that the 8(a) program was doing precisely what it was intended to do. Moreover, under SBA Standard Operating Procedures, a failure on the part of 8(a) program participants to actively pursue business opportunities results in a termination of the 8(a) program benefits. SBA Standard Operating Procedure No. 60–41–2 at ¶ 66(a)(9).

In helping Welmetco achieve a competitive position in the market place by pushing through the 8(a) subcontract award before the competitive bids on DSA Solicitation No. 100–76–B–998 were opened, defendants did not abuse the 8(a) program or exceed the statutory and regulatory authority for that program. Their actions were "rationally related to a proper government purpose".

Having thus found, the Court need not determine whether an award of the DSA Contracts to Welmetco would violate the non-discrimination provisions of Title VI and the Fifth Amendment. *Ray Baillie Trash Hauling, Inc. v. Kleppe, supra*; *Valley Forge Flag Company, Inc. v. Kleppe, supra*.

Accordingly, defendants' motion to dismiss, treated as a motion for summary judgment, will be granted and plaintiff's cross-motion for summary judgment will be denied.