**DATA TRANSFORMATION CORP.**

v.

**The UNITED STATES.**

**No. 343–87C.**

United States Claims Court.

Aug. 19, 1987.

166

Douglas J. Rykhus, Washington, D.C., attorney of record for plaintiff.

George M. Beasley, III, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, attorney of record for

defendant. Deirdre MacNeil, Small Business Admin., of counsel.

## MEMORANDUM OPINION

LYDON, Senior Judge:

Plaintiff has filed a complaint in this court seeking a preliminary and permanent injunction. Alternatively, plaintiff alleges a taking by the government of its property without the payment of just compensation as required by the Fifth Amendment to the Constitution of the United States.[1] Plaintiff has, attendant to this complaint, filed a Motion For A Preliminary Injunction. In this motion plaintiff seeks a preliminary injunction restraining the Small Business Administration (SBA) and/or the Federal Aviation Administration (FAA) from making an award of a contract, identified as an Airport Weather And Information System (AWIS) procurement, to any supplier other than plaintiff. Defendant has responded by filing a Motion To Dismiss, or, in the alternative a Motion For Summary Judgment, as well as an opposition to plaintiff's motion for injunctive relief. Reply briefs were thereafter filed by the parties. Upon consideration of the submissions of the parties and a hearing on the matter, the court concludes that plaintiff is not entitled to injunctive relief and that its complaint should be dismissed.

### Facts

Plaintiff is a minority owned small business corporation, with its principal place of business in Silver Spring, Maryland. It is certified by SBA as a Section 8(a) firm. For a discussion of a section 8(a) firm see *Harris Systems Intern., Inc. v. United States*, 5 Cl.Ct. 253, 255–56 (1984).

In early 1986, the FAA was in the process of acquiring, through a competitive two-step solicitation, data communication terminals to comprise an AWIS. This procurement involved teleprinter Digital Data Communication terminals, including support and maintenance service. On April 3, 1986 a letter was sent by the New York District Office (NYDO) of the SBA to FAA requesting that the AWIS procurement be set aside for the section 8(a) program. This letter stated in pertinent part:

> Pursuant to Section 8(a) of the Small Business Act (15 USC 637(a)), the Small Business Administration is requesting your assistance in the identification of requirements in support of the approved business plan of Apoca Industries. Specifically requested are requirements for Programmed Teleprinter Digital Data Communication Terminals including support and maintenance service.
>
> *       *       *       *       *       *
>
> The Small Business Administration may provide ongoing management, technical, and financial support to assist this concern to perform any contract which we mutually agree to be within its capability.
>
> *       *       *       *       *       *
>
> Your support of this concern and the 8(a) program is appreciated.

By letter dated May 22, 1986, the FAA advised SBA it was unable to honor its set-aside request for the AWIS procurement. The FAA stated that its Procurement Center Representative had investigated the feasibility of a set-aside for the section 8(a) program and met with negative results. The FAA May 22, 1986 letter concluded as follows:

> At this point, we regret that we are unable to honor your request to set this acquisition aside for the 8(a) program. However, we will be glad to provide Apoca Industries with a copy of the solicitation package so that they may submit a technical proposal under step one of this two step method. This would also allow the firm the opportunity to gain exposure to the Federal acquisition process from a competitive standpoint.
>
> Thanks for your interest in FAA acquisitions. We will continue to support Small Business Administration programs in any way we can.

---

1. Plaintiff originally filed its complaint in the District Court for the District of Columbia. By Order dated June 9, 1987, the District Court transferred the case to this court with the consent of both parties. The amended complaint was filed in this court on July 10, 1987.

On June 4, 1986, SBA advised FAA of its intent to protest to the Secretary of the Department of Transportation the FAA decision not to set aside the AWIS procurement for the section 8(a) program and Apoca Industries (Apoca).

On July 25, 1986, SBA officials, together with Apoca personnel, met with FAA officials in Washington, D.C. concerning section 8(a) procurement of the AWIS and Apoca's capabilities and how it would handle the AWIS job.

On August 14, 1986, SBA submitted to FAA a list of references for Apoca which had been requested at the July 25, 1986 meeting, and recommended that FAA personnel visit Apoca's premises before making a final decision with regard to an AWIS set aside for the section 8(a) program. On September 4, 1986, FAA representatives visited Apoca's plant and heard a detailed on-site presentation of how Apoca would handle the AWIS procurement, according to the specification.

By memorandum dated November 7, 1986, the Administrator, FAA was advised by FAA personnel working on the AWIS section 8(a) set aside as follows:

> We have reviewed the technical evaluations of the contractors who are being considered for award of the AWIS contract under the 8(a) program. As you know, APOCA Industries has been instrumental in bringing the AWIS acquisition under consideration for an 8(a) award. Although the Small Business Administration (SBA) recommended APOCA for this work, your staff contacted additional 8(a) firms for a technical evaluation.

> Based on our review of the technical evaluations, we believe that APOCA is technically capable of performing the work. In view of all the considerations involved in this selection, we believe that it would be appropriate to provide the technical evaluations to SBA and permit SBA to designate the firm for the award.

On December 9, 1986, the FAA, through its contracting officer advised SBA in pertinent part:

The Federal Aviation Administration (FAA) was in the process of acquiring, through competitive, two-step solicitation, data communications terminals to comprise an airport weather and information system (AWIS). Prior to releasing the solicitation, the FAA was requested by the Small Business Administration's New York City District Office to set the requirement aside for award to Apoca Industries, Bohemia, NY, under the 8(a) program. The FAA agreed to allow Apoca Industries an opportunity to make a presentation of its technical capabilities to perform the requirement. The FAA then received a request from SBA's Seattle, Washington District Office requesting that the requirement be set aside for award to G & M Enterprises, Tacoma, WA, under the 8(a) program. FAA agreed to allow G & M Enterprises an opportunity to make a presentation of its capabilities to perform the requirement.

While these firms were being allowed to make technical presentations, three more firms were also allowed to make presentations of their technical capabilities to perform the AWIS requirement. The FAA felt that by assessing the capabilities of these five firms, the FAA Program Office would have a good chance of selecting an 8(a) firm which would have a high potential for successful performance with minimal risk to the FAA. In descending order of acceptability, the firms that made technical presentations were:

> Data Transformation Corporation, Silver Spring, Maryland
>
> Henderson Industries, West Caldwell, New Jersey
>
> Texas Mil-Tronics Corporation, San Antonio, Texas
>
> Apoca Industries, Bohemia, New York
>
> G & M Enterprises, Tacoma, Washington

The December 9, 1986 letter advised that an enclosed request for proposal outlined the specific requirements of the AWIS program and noted that the estimated cost for the performance of the required work was

$1.853 million and that the performance time was approximately two years. The FAA contemplated an award of a firm fixed price contract and "requested that SBA select the firm for FAA to negotiate with." The December 9, 1986 letter concluded in pertinent part as follows:

> The FAA strongly recommends that this requirement be awarded to Data Transformation Corporation (DTC), 8121 Georgia Avenue, Silver Spring, Maryland 20910. DTC was selected by the FAA Program Office after technical presentations of five, 8(a) firms. These firms were evaluated in accordance with a uniform set of evaluation factors pertinent to the AWIS Program requirements.
>
> The FAA firmly believes that DTC is best qualified for this award because they have been assessed as having full, existing capability to perform the AWIS requirement, including the critical delivery schedule. DTC's proposed subcontractor, MicroBilt, has recently supplied AWIS type equipment to the FAA's Southern Region. Both firms have performed on previous FAA contracts, some of which are still active, and have good performance track records. Based on the extremely time-critical nature of the AWIS requirement, the FAA requests that authority to negotiate be granted as soon as possible so that we may proceed to contract award in a timely manner. Since two SBA District Offices have specifically requested consideration of the AWIS requirement for award to two separate 8(a) firms, a copy of the FAA Program Office Evaluation Report is enclosed for your review. Please do not release the evaluation report or the contents thereof without the concurrence of the undersigned.

Plaintiff suggests that the above FAA action indicates a rejection of Apoca as a potential AWIS contractor. The record does not support this suggestion. The declaration of a FAA official makes it clear that Apoca was never rejected as a potential AWIS contractor. Indeed, FAA has accepted Apoca as a potential AWIS contractor.

The Office of Program Development (OPD), Minority Small Business & Capital Ownership Development, Central Office of the SBA, through its Director, prepared a memorandum in response to FAA's letter of December 9, 1986. This memorandum, after recapitulating the FAA's December 9, 1986 letter, concluded as follows:

> The SBA does not concur with the FAA recommendation that the AWIS requirement should be awarded to DTC. Consistent with our standard policy of matching 8(a) contracts with the 8(a) firm that self-marketed the project, we believe that the record clearly demonstrates that the AWIS project was offered for 8(a) negotiation based on the initiative taken by the New York District Office on behalf of Apoca, and that the award should be offered to Apoca because they self-marketed the requirement.

SBA regulations provide that "SBA will usually reserve a procurement for possible 8(a) award in favor of an 8(a) concern which initially self-marketed the procurement, provided the firm needs the requirement to satisfy its business plan projections without exceeding them." 13 C.F.R. § 124.301(b)(5) (1987). SBA selected Apoca for the AWIS procurement because of its specific self-marketing efforts for placement of the AWIS requirement in the section 8(a) program.

On January 13, 1987, the SBA notified FAA, in accordance with applicable statutes, that it desired to enter into a contract with FAA for the AWIS procurement. It noted that the estimated value of the procurement was $1,853,000 and that its request for the contract was in support of an approved business plan of Apoca. FAA was requested to reserve the AWIS procurement for negotiation of a section 8(a) award to SBA. FAA was asked for its approval of the request. SBA assigned National Buy Number (NBN) 7700–87–1986 to FAA's December 9, 1986 offer to set aside AWIS for section 8(a) and had also advised FAA that SBA's NYDO would notify FAA when negotiations for this section 8(a) award could proceed with Apoca.

By letter dated March 24, 1987, FAA informed SBA in pertinent part as follows:

The Federal Aviation Administration (FAA) has a requirement for data communication terminals to comprise an airport weather and information system (AWIS). APOCA Industries of Bohemia, New York has been selected to perform this requirement under the Small Business Administration's (SBA) 8(a) program.

Please provide APOCA Industries with a copy of the enclosed RFP that they may prepare a proposal in response thereto. Proposals shall be prepared in accordance with the instructions contained in Section L of the RFP and the proposal package shall include a completed set of the Section K Representations and Certifications. Please submit the requested proposal by April 19, or earlier, if possible.

By letter dated May 15, 1987, SBA submitted (on behalf of its subcontractor Apoca) a proposal to FAA's RFP for consideration of award under section 8(a) of the Small Business Act, as amended. The letter stated in pertinent part: "Should the proposed price be acceptable, please forward the prime contract and subcontract documents to this office for execution. If further negotiations are required, please provide this office with copies of the applicable pricing review, including audit and technical evaluations, if any. Should the pricing review be based on a Fair Market Price (FMP) determination, please provide the information; tripartite negotiations will be arranged."

As of the date of this memorandum opinion, the proposed contract between SBA and FAA has not been awarded since negotiations are still going on between FAA and Apoca as to the terms of the proposed SBA–FAA prime contract and SBA's proposed subcontract with Apoca. FAA, since the RFP has been issued to SBA and Apoca and Apoca has submitted a response thereto, is conducting an extensive evaluation of Apoca's proposal in response to the FAA RFP. The initial proposal by Apoca has been clarified, at the request of FAA. Con-trary to plaintiff's intimations, the FAA has not rejected Apoca's proposal or found its proposal unacceptable. Apoca's proposal to FAA is following normal procedures and processing for a negotiated procurement. There is no evidence that FAA required Apoca to change the technical proposal it submitted to FAA because it was unacceptable to FAA.

The SBA has never requested that plaintiff respond to a request for proposal (RFP) in connection with the AWIS procurement, nor is there any evidence that FAA sent any RFP to plaintiff or anyone else at this time regarding AWIS. Plaintiff was, however, allowed to make an informal technical presentation to FAA, as were four other firms including Apoca, relative to their technical capabilities to perform the AWIS requirement. The presentation was designed to determine whether the procurement should be set aside for the section 8 program. The FAA, while it carefully evaluated the firms in this regard, it did not "extensively" evaluate them since extensive evaluation only occurs after an RFP has been issued and a proposal received relative thereto.

Plaintiff concedes in its complaint, that no formal technical proposals were requested by FAA. This presentation consisted of a review of each company, its personnel, experience, performance record and the technical, management, equipment and supplier aspects of each as a working entity. SBA never advised plaintiff that it was being considered by the SBA as a potential section 8(a) subcontractor in connection with the AWIS requirement, nor has SBA requested plaintiff to prepare any bid or proposal relative to the AWIS requirement. Plaintiff has submitted no proposal to FAA or SBA, nor has an RFP been issued requesting any such proposal.

In its complaint, plaintiff alleges that the proposed FAA award to Apoca through SBA includes a technical solution or the equipment, or both, proposed by plaintiff to FAA when it made its presentation to FAA relative to the AWIS requirement. A declaration by a knowledgeable FAA official states that this is not correct. While plain-

tiff argues that FAA "directed Apoca to use the technical solution proposed by [plaintiff] [hardware and firmware by Microbilt], the above FAA declaration refutes such an allegation." Indeed, when Apoca made its presentation to FAA, along with the other four firms, it advised FAA of its intent to provide hardware, to do the job, obtained from Texas instruments, not Microbilt. Plaintiff erroneously alleges that Apoca's intent at the time was to build the hardware itself.

Plaintiff alleges in its complaint that the proposed award to Apoca constitutes a supplier, a technical solution and equipment not heretofore evaluated by FAA. Plaintiff further alleges that award of a technically complex system to an unevaluated work system-contractor, solution equipment, like Apoca, is not in accordance with the responsibility of FAA and the authority of SBA. The fact is, however, that Apoca's technical proposal is now being thoroughly evaluated by competent government experts. Plaintiff, in its complaint, alleges that the proposed award to Apoca is not within the authority of SBA and that the court should restrain SBA from making any section 8(a) award to Apoca.

### Discussion

#### A. Jurisdiction

■ Defendant argues that the court lacks jurisdiction to consider plaintiff's request for injunctive relief. Defendant further argues that plaintiff's due process claim is also beyond this court's jurisdiction.

It is well established that the jurisdiction of this court is limited. *See United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Williams Intern. Corp. v. United States*, 7 Cl.Ct. 726 (1985). Under 28 U.S.C. § 1491(a)(3) the court has limited jurisdiction to grant injunctive relief in the contract area of "bid protests". This limited jurisdiction rests on the establish-

ment of an implied-in-fact contractual relationship between a bidder and a procuring agency which arises when an agency invites a contractor to respond, submit a bid, to an invitation or solicitation to perform work or render service. When such a bid is submitted, pursuant to an invitation or solicitation, an implied-in-fact contractual relationship is created that the bid will be fairly and honestly considered by the procurement agency. It is this implied-in-fact contract which underscores the injunction authority of this court. *See Harris Systems Intern., Inc. v. United States, supra*, 5 Cl.Ct. at 260 and cases cited therein.

In section 8(a) cases, as is the situation at bar, the implied-in-fact contract concept is difficult to establish because of the nature of the procurement. The section 8(a) program is designed to help disadvantaged small business concerns owned and controlled by socially or economically disadvantaged persons to achieve a competitive position in the market place. Section 8(a) procurements are exempt from procurement procedures mandated for non-section 8(a) procurements and are also not subject to the Competition in Contracting Act. *See Cassidy Cleaning, Inc. v. United States*, 10 Cl.Ct. 317, 319–20 (1986). *See also Fortec Constructors v. Kleppe*, 350 F.Supp. 171, 173 (D.D.C.1972). Thus, it is not unusual to find in section 8(a) procurements the lack of an invitation or solicitation and the lack of a bid. A section 8(a) procurement can result from a "search" for a procurement which fits the section 8(a) mold; communications between the procurement agency and the SBA; agreement between the agency and SBA on a contractor; negotiations between the agency and SBA/contractor; and agreement, contracts, between the parties.

■ In the case at bar, there was no solicitation or invitation for bids issued by FAA or SBA. Plaintiff did not submit any bid to FAA or SBA.[2]

---

**2.** In proceeding under the section 8(a) milieu, the FAA received oral informal presentations from five section 8(a) certified contractors, including plaintiff, regarding their experience, personnel, capabilities, etc. relative to the FAA

requirement which was the subject of section 8(a) consideration. Plaintiff, at oral argument, stated FAA orally requested the presentation. Some firms provided more technical information than others at their separate oral presenta-

Plaintiff argues that the presentation it made to FAA should be equated to a response to a solicitation sufficient to create an implied-in-fact contract, thereby conferring jurisdiction on this court under 28 U.S.C. § 1491(a)(1) and (3). It offers no authority to support this novel proposition. Plaintiff's claim is without merit. There is a qualitative difference between plaintiff's presentation, which was merely an informal presentation of its technical *ability* to perform the work called for under the planned program, and a response to a solicitation which is an acceptance of the government's offer, thereby creating the necessary implied-in-fact contract.

It is concluded that the court has no jurisdiction over plaintiff's request for injunctive relief under 28 U.S.C. § 1491(a)(3) since it was not requested to bid or submit a response to an RFP and in fact did not submit any bid. *See ATL, Inc. v. United States*, 736 F.2d 677, 682 n. 17 (Fed.Cir. 1984) ("The implied-in-fact contract theory extends only to bidders."). *See also Aviation Enterprises, Inc. v. United States*, 8 Cl.Ct. 1, 23 (1985); *Harris Systems Intern., Inc. v. United States, supra*, 5 Cl.Ct. at 260–62; *Golden Eagle Refining Co. v. United States*, 4 Cl.Ct. 613, 618 (1984); *Alabama Metal Products, Inc. v. United States*, 4 Cl.Ct. 530, 533 (1984); *Drexel Heritage Furnishings, Inc. v. United States*, 3 Cl.Ct. 718, 720–21 (1983); *Hero, Inc. v. United States*, 3 Cl.Ct. 413, 416 (1983).[3]

Plaintiff contends that the proposed award to Apoca includes the technical solution and the equipment proposed by plaintiff in its oral presentation to FAA relative to the AWIS procurement. Plaintiff claims that any award to Apoca under such circumstances would constitute a "confiscation by the Government of property of [plaintiff] without due process or compensation * * *" in violation of the Fifth Amendment to the United States Constitution. Defendant challenges plaintiff's reliance on the due process clause in support of any damage claim in this court. It has been held that the due process clause is not a "money mandating" provision. Accordingly, this court does not have jurisdiction over damage claims based on the due process clause. *Carruth v. United States*, 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980).[4]

### B. *Injunctive Relief*

■ Assuming *arguendo* jurisdiction, plaintiff has failed to establish entitlement

---

tions. Plaintiff prepared an "outline" of its presentation designed to impress FAA with its experience and capability to do the AWIS job. It appears that one of the basic reasons for these informal oral presentations was to help FAA decide if the AWIS should be set aside for section 8(a) procurement purposes. The presentations were not intended to decide who got the contract. Plaintiff concedes that no formal technical proposals were requested nor is there any indication that any formal written or oral proposals were received by FAA from any of the five section 8(a) contractors. The fact that as a result of these presentations, FAA felt plaintiff's presentation was best does not, in the context of a section 8(a) selection of a contractor, create an implied-in-fact contract sufficient to confer injunctive jurisdiction on this court.

3. Plaintiff relies on *Cassidy Cleaning, Inc. v. United States*, 10 Cl.Ct. 317 (1986) and *Standard Manufacturing Co. v. United States*, 7 Cl.Ct. 54 (1984) to support its claim that the court has jurisdiction in the instant case. Citation to *Cassidy Cleaning, Inc. v. United States, supra*, is misplaced because in that case the court expressly declined to decide the jurisdictional issue and went straight to the merits. *Id.* at 319.

Likewise, citation to *Standard Manufacturing Co. v. United States, supra*, is unavailing for several reasons. First, that case did not ፧ ıvolve a section 8(a) program but rather a sole source procurement (that was outside the scope of 8(a)). *See id.* at 57. Second, the court noted the fact specific nature of its decision. *See id.* at 58 n. 10 and accompanying text. Finally, the court did not purport to disagree with *Harris Systems Intern., Inc. v. United States*, 5 Cl.Ct. 253 (1984) and indeed quoted from that opinion with approval. *Standard Manufacturing Co. v. United States, supra*, 7 Cl.Ct. at 58.

Additionally, plaintiff's attempt to distinguish the instant action from *Harris Systems Intern., Inc. v. United States, supra*, 5 Cl.Ct. 253 is without merit. Plaintiff points to certain non-substantive distinctions between that case and the instant case which do not in any way lessen application of the law set forth in the *Harris* case to this case.

4. The court, however, does have jurisdiction over Fifth Amendment taking claims. Plaintiff's taking claim will be addressed, *infra*.

to the injunctive relief it seeks. Injunctive relief in this court under 28 U.S.C. § 1491(a)(3) is an extraordinary remedy that must be exercised with caution. *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983). Plaintiff carries the burden of establishing its right to injunctive relief. *Joseph Bancroft & Sons Co. v. Shelley Knitting Mills, Inc.,* 268 F.2d 569, 574 (3rd Cir.1959). Plaintiff must also establish its right to injunctive relief by a clear and convincing showing of a need therefor. *Goldammer v. Fay,* 326 F.2d 268, 270 (10th Cir.1964); *Coffee Dan's, Inc. v. Coffee Don's Charcoal Broiler,* 305 F.Supp. 1210, 1213 (N.D.Cal.1969). *See also Baird Corp. v. United States, supra,* 1 Cl.Ct. at 664. Plaintiff has failed to carry these burdens in this case.

■ Plaintiff does not cite any statute or regulation that has been violated by FAA or SBA in implementing the section 8(a) program in this case. The section 8(a) program has been held to be constitutional. *Ray Baillie Trash Hauling, Inc. v. Kleppe,* 477 F.2d 696 (5th Cir.1973), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1410, 39 L.Ed.2d 468 (1974). There is no evidence that the FAA or SBA overstepped their authority or abused the discretion accorded them with respect to the individual steps taken in processing the section 8(a) proposed award in this case. *See Eastern Canvas Products Inc. v. Brown,* 432 F.Supp. 568, 571–72 (D.D.C.1977); *Valley Forge Flag Co. v. Kleppe,* 506 F.2d 243, 245 (D.C.Cir.1974).

Instead, plaintiff focuses on the fact that FAA, in its initial evaluations of the five (5) section 8(a) contractors interested in the AWIS requirement, rated plaintiff first in a descending order of acceptability based on its technical presentations, with Apoca, the selected section 8(a) contractor rated fourth. Plaintiff claims this demonstrates arbitrary and capricious action on the part of FAA and/or SBA. FAA did rate plaintiff first and indeed recommend that plaintiff be selected as the AWIS section 8(a) contractor. While FAA recommended plaintiff it also stated its belief that "Apoca is technically capable of performing the

work." Accordingly, finding both plaintiff and Apoca technically capable of performing the required work, FAA felt it appropriate to provide the evaluations to SBA and permit SBA to designate the section 8(a) contractor. SBA designated Apoca and FAA accepted Apoca as the section 8(a) contractor for the AWIS requirement. The essence of plaintiff's complaint is that it was better qualified to do the job than the firm selected. However, the judgment of both FAA and SBA was that Apoca should be the section 8(a) contractor and that it was technically capable of performing the work. Under such circumstances, the court should, and does, defer to the expertise and discretion of the agencies involved in the section 8(a) selection process. Judicial intrusion into the procurement process is generally infrequent, limited and circumspect. *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1300–01 (D.C.Cir.1971); *Baird Corp. v. United States, supra,* 1 Cl.Ct. at 664. The discretion inherent in the section 8(a) contractor selection process requires even greater judicial restraint. *See Valley Forge Flag Co. v. Kleppe, supra,* 506 F.2d at 244. Plaintiff, in its presentations, loses sight of the critical fact that the procurement in question was a section 8(a) procurement, one not subject to the niceties of competitive bidding procurement, as discussed previously.

SBA recognized that both plaintiff and Apoca, and perhaps one or more of the other firms, were technically capable of performing the AWIS requirement. Published regulations of the SBA provide in pertinent part that " * * * SBA will usually reserve a procurement for possible 8(a) award in favor of an 8(a) concern which initially self-marketed the procurement * * *." In his declaration, Albert B. Carter, the OPD Director, SBA, at all times relevant to this case, stated that under SBA regulations an 8(a) procurement is generally reserved for the firm that self marketed the particular procurement. An agency's construction and application of its own regulation, issued to implement statutory duties placed upon it, is entitled to great deference. *Udall v. Tallman,* 380

174

U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Three S. Constructors, Inc. v. United States*, 13 Cl.Ct. 41, 45 (1987). Plaintiff has offered nothing which shows that SBA's actions in this regard were arbitrary, capricious or an abuse of its discretion. It is undisputed that Apoca was instrumental in bringing the AWIS requirement into the section 8(a) program, i.e., self-marketed the AWIS procurement for section 8(a) coverage. Plaintiff argues that the AWIS procurement should not be viewed as being self-marketed by Apoca because Apoca was not awarded the contract after it made its initial inquiry relative to setting AWIS aside as a section 8(a) program. This unsupported contention is without merit. Absent Apoca's actions the AWIS procurement may not have been considered for the 8(a) program.[5]

■ Under the published regulations, selection of Apoca was appropriate. Further, such a selection determination, under the circumstances, is neither irrational nor unreasonable. In the area of socio-economic legislation, which embraces the section 8(a) program, the actions of SBA must be upheld if they are rationally related to a proper government purpose. The fact that the section 8(a) program may produce some inequalities among section 8(a) contractors vying for the same procurement does not, without more, provide a basis for judicial interference. *See Ray Baillie Trash Hauling, Inc. v. Kleppe, supra,* 477 F.2d at 709; *Eastern Canvas Products, Inc. v. Brown,* *supra,* 432 F.Supp. at 571–72. Thus, award of a section 8(a) contract to Apoca relative to the AWIS requirement would not be irrational, arbitrary or capricious.[6]

In arguing that Apoca was chosen *solely* on the basis of self marketing plaintiff claims that SBA erroneously relied only on 13 C.F.R. § 124.301(b)(5) (1987) and ignored the language of 13 C.F.R. § 124.301(b)(6) (1987) in making its decision. The latter regulation provides 12 factors for the SBA to consider when it must choose between more than one qualified firm. The only factor plaintiff cites is the first one—"technical capability." Yet, as has already been pointed out, Apoca was found to be technically capable of performing the AWIS work. That factor, like the other 11, are to be utilized under the sound discretion of SBA. Giving due deference to the SBA determination it cannot be said that under the plain language of 13 C.F.R. § 124.-301(b)(5) and (6) that the SBA's decision to choose Apoca was arbitrary and capricious. *See Three S. Constructors, Inc. v. United States, supra,* at 46.

Finally, plaintiff argues that it should be granted an injunction barring any award to Apoca because such an award would violate the due process clause of the Fifth Amendment. Plaintiff alleges, without substantive proof, that the proposed award to Apoca would require the use of plaintiff's technical solution and plaintiff's hardware which plaintiff revealed to FAA when it made its oral presentation relative to the

5. Plaintiff insists that Apoca was not awarded the AWIS procurement when it first approached FAA in April 1986 because it was not technically capable of performing the work. Plaintiff offers no support for this claim other than its "belief." In fact one of plaintiff's own submissions, an October 14, 1986 FAA memorandum, states that the reason for FAA's original rejection of Apoca's 8(a) request was because "[FAA was] in the acquisition cycle," i.e., the AWIS procurement was to be competitively let and not part of the section 8(a) program. It had nothing to do with the technical capability of Apoca.

6. Plaintiff's allegations of arbitrary, capricious action by FAA/SBA and lack of a rational basis for the selection of Apoca as the section 8(a) contractor rests on the fact that plaintiff was rated first by FAA based on its technical presen-

tation whereas Apoca was rated fourth. Plaintiff argues that entrusting a complex procurement involving airport safety to a fourth rated contractor is irrational, arbitrary and capricious. Plaintiff continuously argues, without any support, that Apoca is not capable of performing the work required under the AWIS program. The wind in the sail of this argument is quieted by the fact that FAA specifically found Apoca technically capable of performing the AWIS requirement and accepted Apoca as the section 8(a) contract. It would be unreasonable to assume that FAA would do this if airport safety would be in jeopardy by awarding the contract to Apoca. An agency is not compelled to accept a section 8(a) contractor selected by SBA. *See Harris Systems Intern., Inc. v. United States, supra,* 5 Cl.Ct. at 261, 265.

AWIS requirement.[7] Thus, plaintiff claims, this due process violation, i.e., use of its ideas and proposals, serves as a basis for granting the injunction it seeks.

■ It may well be that in some cases a violation of due process may justify the issuance of an injunction. *See Related Industries, Inc. v. United States*, 2 Cl.Ct. 517, 526–27 (1983); *Cf. Cassidy Cleaning, Inc. v. United States, supra*, 10 Cl.Ct. at 320. However, plaintiff has not shown such a violation to have occurred in this case. Plaintiff concedes that its solution and equipment proposals were stated in an oral presentation only. A written presentation of these ideas and proposals might have provided a stronger case for plaintiff. *See Research Analysis & Development, Inc. v. United States*, 8 Cl.Ct. 54 (1985). Plaintiff has not offered by affidavit or otherwise facts which would show or indicate an improper use of its proposal or idea by FAA. Accordingly, there is no basis for finding a due process violation.

Evaluation of the criteria necessary for the granting of an injunction indicates clearly that plaintiff is not entitled to injunctive relief. The burden is on plaintiff to satisfy each of the criteria requirements. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir.1975). Plaintiff has failed to make an adequate showing that it is likely to prevail on the merits, let alone a strong showing. The above discussion supports this conclusion.

■ Plaintiff has failed to establish it will suffer irreparable harm without injunctive relief. Five section 8(a) contractors contended for the AWIS requirement. Four, of necessity, were bound to lose. In the section 8(a) program this is not unexpected. *See Cassidy Cleaning, Inc. v. United States, supra.*[8]

Plaintiff contends that granting the injunction requested would not harm others involved in the litigation, i.e., the government. However, it is not unreasonable to expect that the granting of the injunction might well engender delay, confusion and chaos in the administration of the section 8(a) program, a program that exists and flourishes because of the discretion that is placed on the SBA and various government agencies in an effort to help small business concerns owned and controlled by socially or economically disadvantaged persons. Granting an injunction will harm another section 8(a) contractor, thereby impinging on the discretionary authority given SBA to select such contractors. It is conceded that the section 8(a) program may produce some inequalities among small business concerns as a class. But the court is leery of substituting its judgment for that of the SBA less it create more harm than may already exist. The above observation suggests that granting the injunction request-

---

7. Plaintiff concedes that its solution and the equipment it proposed to use was not in writing but was oral. It attaches to its motion for a preliminary injunction a copy of a page from a solicitation entitled "GENERAL INSTRUCTIONS TO OFFERORS," pertaining to how offerors can protect data supplied to FAA from disclosure or unauthorized use by means of markings or legends on submitted materials. Since the presentation plaintiff made was oral, there was no way it could restrict use of its orally transmitted solution and proposed equipment. Submission of proposals and ideas to the government orally without some written restrictive use language provides a very shaky foundation on which to premise a deprivation of due process claim based on alleged improper use of said oral ideas and proposals.

8. Plaintiff seeks to satisfy the irreparable harm criteria by claiming that if the proposed award to Apoca is not enjoined, contract performance would be so nearly complete by the time the

merits are decided that SBA could not make an award to plaintiff. This claim does not show irreparable harm. The fact that plaintiff may not receive all of the government business it desires does not create a right to insist that the government offer it more or require that the court interfere with the socio-economic discretionary policy decision of government agencies. *See Jets Services, Inc. v. Hoffman*, 420 F.Supp. 1300, 1306–07 (M.D.Fla.1976). More persuasive claims than the one advanced by plaintiff have been found not to constitute irreparable harm sufficient to warrant the issuance of an injunction. *See Blaich v. National Football League*, 212 F.Supp. 319, 323 (S.D.N.Y.1962) (loss of profits); *Harris Systems Intern., Inc. v. United States, supra*, 5 Cl.Ct. at 265 (crippling effect on firm resulting in layoff of over 100 current employees). *See also American Hospital Association v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980); *Sanders v. Airlines Pilots Association*, 473 F.2d 244, 248 (2d Cir.1972).

**176**

ed by plaintiff would not be in the public interest. In the operation of the section 8(a) program, the action of government agencies must be upheld if rationally related to a proper government purpose. *Ray Baillie Trash Hauling, Inc. v. Kleppe, supra,* 477 F.2d at 709. The governmental actions in the case at bar were clearly related to a proper government purpose. These discretionary actions were reasonable, rational, and proper.

■ Finally, it is to be noted that plaintiff makes no allegations of fraud or bad faith on the part of either FAA or SBA in their joint decision to award the section 8(a) contract to Apoca in its complaint or motion for a preliminary injunction. However, in its final brief it argues unpersuasively that selection of Apoca as the section 8(a) contractor was accomplished in bad faith. Nothing in the materials before the court show, or suggest, by inference or otherwise any bad faith by FAA or SBA in the section 8(a) selection process. There is a presumption that public officials perform their official duties properly and in good faith. *Sun Oil Co. v. United States,* 215 Ct.Cl. 716, 746, 572 F.2d 786, 805 (1978). Indeed, it takes "well-nigh irrefragable" proof to establish that public officials act in bad faith. *Knotts v. United States,* 128 Ct.Cl. 489, 492, 121 F.Supp. 630 (1954). The above presumption stands unrebutted in this case. Plaintiff does not allege any violation of any statute or regulation. Its constitutional claim of a due process violation is devoid of merit as a factual matter and dubious as a matter of law on the known facts.

### C. *Taking*

In its amended complaint, plaintiff alleges that "[a]n award consisting of [plaintiff's] technical solution or [plaintiff's] equipment, or both, constitutes the confiscation by the Government of property of [plaintiff] without * * * compensation which the Government is prohibited from doing by the Fifth Amendment to the Constitution of the United States." This short allegation is offered as the basis for a Taking cause of action—a claim within the jurisdiction of this court.

■ Plaintiff provides no material details as to this alleged taking. There is no indication that the Government intended to take plaintiff's property. There is no description of the property taken other than that it consisted of an oral presentation to FAA of plaintiff's technical solution as to how it would perform the AWIS requirement and what equipment it would use. Plaintiff suggests that the award to be made to Apoca requires that Apoca use the technical solution discussed by plaintiff in its oral presentation to FAA and the same equipment it proposed to FAA at that time to carry out the work. This idea or solution and the type of equipment to be utilized constitutes plaintiff's property which was allegedly taken. Plaintiff does not offer the proposed award in support of its claim nor does it submit an affidavit which indicates that the claim alleged is more than "wishful thinking" by plaintiff or conclusionary speculation by counsel.

Finally, declarations attached to defendant's reply brief clearly show the lack of a factual basis for plaintiff's taking claim. It would appear that plaintiff proposed to perform the AWIS contract using hardware and firmware by Microbilt. Apoca, on the other hand, proposed to use Texas Instruments hardware. As to software, Apoca knew that the levels of commercial availability of software were high. Apoca never considered use of Microbilt hardware or firmware. Apoca investigated the commercially available software which would integrate with the Texas Instrument's hardware it proposed to use. It settled on software manufactured by Microbilt.

FAA did not direct Apoca to use the technical solution proposed by plaintiff. The materials before the court persuade that Apoca did not use the technical solution proposed by plaintiff. The facts of record show that Apoca's technical solution of the AWIS requirement was arrived at independently and without knowledge of plaintiff's technical solution. The declaration of a Apoca official, uncontradicted, that Apoca developed its own technical solution and concept relative to the AWIS

requirement to provide a workable and technically feasible system is accepted by the court and is sufficient to defeat plaintiff's taking claim. The fact that both plaintiff and Apoca proposed to use the commercially available Microbilt software is a flimsy ground on which to premise a taking claim. There is no basis for finding a taking of plaintiff's property by Apoca on the basis of the materials before the court.

Upon reflection, the court concludes that plaintiff's complaint fails to state a taking cause of action. It is clear from the complaint that the government in its dealings with plaintiff, was acting in its proprietary capacity, not in its sovereign capacity. Thus, there was no eminent domain undertaking either by declaration or inverse condemnation. The dealings were contractually oriented not taking intended or motivated. Before a taking can be established, it must be clear that there was an intent by defendant to take plaintiff's property. No such intent is stated in the complaint nor can it be inferred or implied from the facts alleged in said complaint, even giving a reading to the complaint most favorable to plaintiff. It is established that not every deprivation, use, possession or control of property is a taking. *See Sun Oil Co. v. United States*, 215 Ct.Cl. 716, 768–71, 572 F.2d 786, 817–18 (1978). Moreover, at oral argument, plaintiff seemed to abandon his claim that a taking occurred within the purview of the Fifth Amendment. Any cause of action that plaintiff might have would be for breach of an implied-in-fact contract, rather than for compensation for a taking under the Fifth Amendment. *See Radioptics, Inc. v. United States*, 223 Ct.Cl. 594, 618–24, 621 F.2d 1113, 1126–29 (1980).

Plaintiff made no claim in its complaint based on an implied contract and properly so. The complaint allegations are not sufficient to state an implied-in-fact claim relative to the use of plaintiff's property. There is no allegation in the complaint that plaintiff's solution and list of equipment was patented, or a trade secret or proprie-

tary data. There is no allegation that plaintiff informed FAA it considered its solution and list of equipment proprietary data that was not to be released. The absence of these critical factual allegations is fatal to the assertion of an implied-in-fact contract claim. *See Research, Analysis & Development, Inc. v. United States, supra*, 8 Cl.Ct. 54. There is no allegation nor has any material been submitted suggesting or indicating by inference or otherwise that the FAA agreed directly or indirectly to bind the government to compensate plaintiff for the use or disclosure of the ideas contained within its oral solution or proposal. Nor is there any evidence that FAA personnel who listened to plaintiff's oral presentation had authority to so bind the government. Absent such allegations the complaint fails to state a claim in contract on which relief can be granted. *Radioptics, Inc. v. United States, supra.*

Defendant has moved for summary judgment requesting the court to dismiss the complaint.[9] Plaintiff has had a fair opportunity to establish any claims it may have relative to the AWIS procurement. The mere assertions of counsel or conclusionary pleadings are not sufficient to establish the existence of genuine issues of fact, which is the case here. Defendant's motion should not be denied to satisfy a litigant's speculative hope of maybe finding some evidence that might serve to save its complaint from dismissal. *See Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626–27 (Fed.Cir.1984).

### Conclusion

For reasons set forth above, plaintiff's motion for injunctive relief is denied. Defendant's motion for summary judgment is granted. The clerk is directed to enter judgment dismissing the complaint. No costs.

---

**9.** Defendant argues, in response to plaintiff's taking claim, that plaintiff has no right to an award of a public contract, citing *Refine Constr. Co. v. United States*, 12 Cl.Ct. 56, 67 (1987). To the extent that this is the thrust of plaintiff's taking claim, i.e., it was deprived of a contract that it rightfully should have received, defendant's position has merit.