**CONTROL DATA SYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 94–592C.**

United States Court of Federal Claims.

Dec. 30, 1994.

Joseph J. Petrillo, Petrillo & Associates, Washington, DC, for Control Data Systems.

Robert J. Krask, Commercial Litigation Branch Civ. Div., Dept. of Justice, Washington, DC, for the U.S.

### *Order*

WEINSTEIN, Judge.

██ Plaintiff, an incumbent contractor, seeks declaratory and injunctive relief to prevent (1) its own termination for convenience, and (2) award of the contract to a follow-on contractor. On the court's own motion[1], after briefing by the parties, the complaint is dismissed for lack of jurisdiction because (1) the contract based on the solicitation was awarded to and fully performed by plaintiff, and (2) the government neither solicited nor received a bid from plaintiff (or any other bidder) for the follow-on contract, and thus plaintiff's claim is not a preaward protest within the court's jurisdiction pursuant to 28 U.S.C. § 1491(a)(3).

### *Background*

Plaintiff Control Data Systems, Inc. (CDS) has held the maintenance contract for the CYBER 175 computer systems at the Naval Air Warfare Center at Point Mugu, California since 1977, when its predecessor compa-

---

1. The court is required, *sua sponte*, to satisfy itself of the proper exercise of its jurisdiction. *See Hambsch v. United States,* 857 F.2d 763, 764 (Fed.Cir.1988).

ny, Control Data Corporation,[2] sold the systems to the Navy. Grillo dec. at 2; Dysthe dec. at 2.[3] On April 28, 1992, the Navy, having decided not to exercise an option year on the contract,[4] issued solicitation No. N00123–92–R–0118. Rec. 5; Grillo dec. at 3. The solicitation contemplated a one-year base period, from October 1, 1992 to September 30, 1993, with up to four one-year option periods. Rec. 6, 15, 24, 32, 40, and a standard termination for convenience clause, *see* Rec. 63 (incorporating FAR § 52.249–4).

CDS and Control Corporation (CC) were the only bidders to submit proposals. Rec. 237. CC, the low bidder, *see* S.Rec. 19–N, was informed on April 28, 1993 that its proposal was deemed technically unacceptable because CC was unable to demonstrate, as required by the solicitation, that its diagnostic software would work on the CYBER 175. Ex. A to Dysthe dec. On May 5, the Navy awarded the contract to CDS, retroactively effective April 1, for a six-month base period (to September 30, 1993), and four one-year options. Ex. C to Dysthe dec. at 1; Rec. 238.

On May 11, 1993, CC protested the award to CDS to the General Accounting Office (GAO), on the grounds that the Navy's rejection of CC was based on a "no responsibility" determination that,[5] because CC was a small business, should have been referred to the Small Business Administration (SBA), pursuant to 15 U.S.C. § 637(b)(7), for its decision whether to certify CC's responsibility by issuing a certificate of competency (CoC).[6] Rec. 180.

CC withdrew its GAO protest shortly thereafter, once the Navy agreed to refer the matter to SBA for a CoC determination. Rec. 184, 185. The Navy instructed CDS to continue performing "pending SBA's decision." Rec. 182. CC did not request, and the Navy did not agree to (and may not have had the authority to agree to), an enlargement of the fifteen-day prohibition on the award of the contract to another bidder pending the SBA's CoC determination, 13 C.F.R. § 125.5(d). (Apparently, the Navy exercised the first option year (October 1, 1993 to September 30, 1994) before the SBA's CoC determination, although this does not appear in the record.)

On November 30, 1993, the SBA notified the Navy that it intended to issue a CoC to CC. Rec. 222. The Navy, protesting that CC was technically unable to perform the contract, appealed the SBA regional office's determination to the SBA central office, pursuant to 48 C.F.R. § 19.602–3. Rec. 231, 233, 237. The Navy's appeals were denied. On June 2, 1994, the SBA issued the CoC to CC and directed the Navy to award the contract to CC.[7] App. 91; Rec. 230–31, 243. No

---

**2.** "CDS" refers to both CDS and its predecessor company, Control Data Corporation.

**3.** "Grillo dec." refers to the Declaration of Warren F. Grillo attached to the motion for preliminary injunctive relief. "Dysthe dec." refers to the Declaration of Roger G. Dysthe, also attached to the motion for preliminary injunctive relief. "Second Dysthe dec." refers to the Declaration of Roger G. Dysthe attached to plaintiff's brief on jurisdiction. "App." refers to the appendix to defendant's opposition to the motion for preliminary injunctive relief. "Rec." refers to the public administrative record filed on September 23, 1994. "S. Rec." refers to the confidential administrative record filed under seal on September 23, 1994.

**4.** The record does not reflect how many option years remained under the existing contract at the time of solicitation, or whether CDS protested the expiration/termination of its incumbent contract at that time.

**5.** An *affirmative* determination of responsibility by a contracting officer is not reviewable by the GAO at the behest of a third party, absent a showing of fraud, bad faith, or failure to meet "definitive responsibility criteria in the solicitation." 4 C.F.R. § 21.3(m)(5).

**6.** 15 U.S.C. § 637(b)(7)(A) authorizes the SBA "[t]o certify to Government procurement officers . . ., with respect to all elements of responsibility, including, but not limited to, capability, competency, capacity, credit, integrity, perseverance, and tenacity, of any small business concern or group of such concerns to receive and perform a specific Government contract."

**7.** Upon issuance of a CoC, the procuring agency is required to award the contract to the recipient of the CoC. *See* 15 U.S.C. § 637(b)(7)(C) ("In any case in which a small business concern . . . has been certified by the [SBA] to be responsible . . ., the officers of the Government having procurement or property disposal powers are directed *to accept such certification as conclusive*. . . ."); *In re Eastern Marine, Inc.,* 63 Comp. Gen. 551, 552 (1984). The statute and regulations thus are inconsistent with the circum-

further Navy appeals of the CoC award are permitted.

On July 5, the Navy informed CDS that, because of the CoC, it planned to award the CYBER 175 maintenance contract to CC,[8] and that it would terminate CDS's contract (for convenience) on August 31. Rec. 244–45. On August 25, the Navy informed CDS that, instead, it would allow CDS's contract to continue until September 30, the expiration date for the current option year, and would not exercise another option. Ex. F to Dysthe dec.

On September 9, 1994, CDS filed suit in this court, pursuant to 28 U.S.C. § 1491(a)(3), seeking declaratory and injunctive relief preventing an award to CC on the grounds that, notwithstanding the SBA's determination, CC did not satisfy the terms of the 1992 solicitation. Subsequently, CDS amended its complaint to allege that the Navy's referral to the SBA, and the SBA's decision to issue the CoC, were erroneous. After CDS filed this action, the Navy decided to exercise another one-year option. Second Dysthe dec. at 1. CC apparently has challenged neither the Navy's exercise of such an option, nor its failure to award the contract

to CC pursuant to the CoC, either in this case or in any other forum. The Department of Justice, which is representing the "government," appears to support the Navy's position that CC is not competent to perform the contract rather than the SBA's determination to issue a CoC.

### Discussion

█ Pre-award claims for injunctive relief under 28 U.S.C. § 1491(a)(3) are based on an implied, supposedly in-fact,[9] contract between the government and a bidder under which, in exchange for the bidder's preparation and submission of a bid, which immediately contractually commits the bidder upon the government's acceptance, the government is obligated to give the bid fair and honest consideration. *New Am. Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1079 (Fed.Cir.1989); *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 909 (Fed.Cir. 1988); *Heyer Prods. Co. v. United States*, 140 F.Supp. 409, 412, 135 Ct.Cl. 63 (1956).

However, "the implied-in-fact contract theory extends only to claims brought by bidders and is limited to the pre-award stage." *ATL, Inc. v. United States*, 736 F.2d 677, 682

---

stances here in which a CoC for a given contract was requested *after* contract award. Thus, it is possible that the SBA may have had no authority to grant a post-award application for a CoC. If, as appears necessary to make an award to CC, a new solicitation is issued by the Navy that contains the same essential terms as the 1992 solicitation, it would appear likely that the CoC could be reissued with respect to a proposed new award. If the Navy decides to exercise the options under its current contract with CDS, as it appears to prefer, the burden shifts to CC to argue that the CoC applies, post-award, not only to the contract, but also to any options exercised by the Navy pursuant to the previous award. However, CC has neither sought to intervene in this case nor to challenge the exercise of the Navy's options under the CDS contract.

**8.** The contract price apparently is to be the price in CC's bid responding to the 1992 solicitation.

**9.** Implied-in-law contracts are not contracts within this court's Tucker Act jurisdiction. *GAF Corp. v. United States*, 932 F.2d 947, 951 (Fed. Cir.1991), *cert. denied*, 502 U.S. 1071, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992); *Merritt v. United States*, 267 U.S. 338, 340–41, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925). In fact, it is a misnomer to call a contract implied in law a contract. *See* 17

C.J.S. *Contracts* § 4 at 555, 563 (1963); 1 Richard A. Lord, *Williston on Contracts* § 1:6 (4th ed. 1990). While the pre-award bidder's situation came to be characterized as an implied-in-fact contract, it more closely resembles one implied in law, since it was originally imposed as a matter of equity and public policy, rather than because there was an actual meeting of the minds on the question of whether the government consented to pay the bidder's bid preparation costs if it failed fairly to consider the bid. *See Heyer Prods. Co. v. United States*, 140 F.Supp. 409, 412, 135 Ct.Cl. 63 (1956); *see also C.F. Harms Co. v. Erie R.R. Co.*, 167 F.2d 562, 564 (2nd Cir.1948) ("The important fact is that [implied-in-law contracts] do not depend upon the obligor's consent; and, indeed, are usually imposed to thwart his purpose.") (L. Hand, Cir.J.). Thus, regardless of the facts, *i.e.*, whether the government, by disclaimers in a solicitation, expressly disavows any intention to pay damages, even if it does not fairly consider all bids, the "contract" nonetheless is imposed. *E.g.*, 1 *Corbin on Contracts* § 19, at 46 (1963); *see, e.g. Restatement (Second) of Torts* § 314A (1965); *cf. Motorola, Inc. v. United States*, 988 F.2d 113, 114 (Fed.Cir.1993) (suits under 28 U.S.C. § 1491(a)(3) said to be "based on an *alleged* implied in fact contract with the United States") (emphasis added).

n. 17 (Fed.Cir.1984); *see also Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1152 (Fed.Cir.1994); *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1369 (Fed.Cir.1983) ("the legislative history makes eminently plain that Congress intended to limit exercise of the Claims Court's equitable powers to contract claims brought to the court before the contract is awarded").

■ Therefore, if the plaintiff has not submitted a bid, or submits a bid not responding to any government solicitation for bids, no implied duty to fairly consider plaintiff's bid arises (*i.e.*, is imposed upon the government), and this court lacks jurisdiction over the plaintiff's suit for injunctive relief. *E.g., Motorola, Inc. v. United States*, 988 F.2d 113, 114–15 (Fed.Cir.1993); *Clean Giant, Inc. v. United States*, 19 Cl.Ct. 390, 394 (1990).

■ The government has issued no new solicitation for bids to perform the services currently performed by CDS, and CDS has not submitted any new bid to perform such services. (Even if it had, an unsolicited bid to perform a contract does not give this court jurisdiction over CDS's request for injunctive relief. *Data Transformation Corp. v. United States*, 13 Cl.Ct. 165, 171–72 (1987).)

The notion that an implied contract of fair consideration can arise between the government and a contractor who does not submit a formal bid was rejected by this court in, among other cases, *Hero, Inc. v. United States*, 3 Cl.Ct. 413, 416 (1983); *Cecile Indus. v. United States*, 2 Cl.Ct. 690, 694 (1983); *Ingersoll–Rand Co. v. United States*, 2 Cl.Ct. 373, 375–76 (1983); *Quality Furniture Rentals, Inc. v. United States*, 1 Cl.Ct. 136, 141 (1983); *Indian Wells Valley Metal Trades Council v. United States*, 1 Cl.Ct. 43, 553 F.Supp. 397, 399 (1982), and by the Federal Circuit in *Motorola, Inc.*, 988 F.2d at 114, 116.

In *Motorola*, the Federal Circuit adopted this court's holding that a contractor's mere participation in a solicitation (by submitting information or a proposal other than a formal bid) does not give the contractor standing to invoke this court's bid protest jurisdiction, and that only submission of a formal responsive bid creates an enforceable government "contract" to provide fair consideration that is specifically enforceable in this court. *Id.* at 114.[10] Once a contract has been awarded, the administration of the existing contract is within the discretion of the agency and disputes are resolved, not by the GAO, but under the contract disputes clause and the Contract Disputes Act. *See* 4 C.F.R. § 21.3(m)(1).

Moreover, "[i]t is well settled that a bidder does not have a contractual right [under 28 U.S.C. § 1491(a)(3) ] to require that a procuring agency fashion an invitation for bids in accordance with all applicable regulations and statutory provisions." *Hero, Inc.*, 3 Cl. Ct. at 417 (citing, *e.g., Keco Indus. v. United States*, 428 F.2d 1233, 1236, 192 Ct.Cl. 773 (1970); *Heyer Prods. Co. v. United States*, 140 F.Supp. at 412).

As in *Motorola*, plaintiff CDS's "grievance is not founded on [the] contract [to provide fair consideration of its bid in response to the 1992 solicitation]," *see Motorola, Inc.*, 988 F.2d at 115, because that implied contract was fully performed by the Navy when the service contract was awarded to CDS in 1993. Rather, as in *Motorola*, plaintiff is objecting to the agency's manner or means of soliciting bids on a contract *to be awarded,* here, to the proposed award of a sole source contract without *any* formal solicitation of bids. (In *Motorola*, the objection was to the solicitation requirements.)

Although CDS may be bound to perform (or continue performing) the contract at the

---

**10.** In contrast, in protests before the GAO, there is no requirement that the protester be an actual bidder. *See* 4 C.F.R. § 21.0(a) (defining an *"[i]nterested party* for the purpose of filing a [GAO] protest" as "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of a contract or by the failure to award a contract"). For the purpose of participating in a protest, an interested party is an awardee if an award has been made or, if

not, any bidder or offeror with "a substantial prospect of receiving an award if the protest is denied." 4 C.F.R. § 21.0(b). However, a GAO protest must be filed within ten days of notice of the initial adverse agency action. 4 C.F.R. § 21.2(a)(2). Also, the GAO does not review an agency's decision to make a referral to the SBA or the SBA's issuance of or refusal to issue a CoC absent a showing of fraud or bad faith by the government. 4 C.F.R. § 21.3(m)(3).

government's option, that commitment arises from the terms of the awarded contract, and not as the result of submitting a bid on the follow-on contract. *Compare Motorola, Inc.,* 988 F.2d at 116 (contract arises in pre-award cases because, once a bidder submits a bid, it may be converted into a binding contract immediately upon the government's acceptance of the bid or award of the contract).

On the contrary, the terms of the contract at issue here specifically negate any government obligation to continue utilizing CDS after the first year. Reading in such an obligation also would be inconsistent with well-established contract law principles recognizing the government's discretion to terminate for convenience or to choose not to exercise an option year. *See Government Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 813 (Fed.Cir.1988); *National Factors, Inc. v. United States,* 492 F.2d 1383, 1385, 204 Ct.Cl. 98 (1974); *G.L. Christian & Assocs. v. United States,* 312 F.2d 418, 423, 160 Ct.Cl. 1 (1963).

■ That CDS has no claim for breach of an implied contract to consider its bid fairly is further shown by the fact that the damages for such a breach are the bidder's bid preparation costs, *Keco Indus. v. United States,* 428 F.2d 1233, 1240, 192 Ct.Cl. 773 (1970), and CDS has incurred no such costs because it has not submitted a second bid.

■ Plaintiff contends that an award to CC is governed by, and thus must comply with, the terms of the 1992 solicitation. While the SBA or the Navy may have a statutory duty properly to apply the CoC requirements, it is not a duty owed to plaintiff *or* to a bidder responding to an RFP. *Cf. Massey Servs., Inc. v. Fletcher,* 348 F.Supp. 171, 175 (N.D.Cal.1972) (large businesses lacked standing to challenge regulations defining "small business concerns"). Nor is it a duty enforceable by this court. *See Katz v. Cisneros,* 16 F.3d 1204, 1209 (Fed.Cir.1994) (Court of Federal Claims cannot grant relief pursuant to the Administrative Procedure Act).

The court concludes that the terms of the 1992 solicitation clearly contemplate only a single offer and a single contract award, to one offeror. *See* Rec. 96 (incorporating FAR § 52.215–16 (1991), which states, "The Government will award *a* contract resulting from this solicitation to *the* responsible *offeror* whose *offer* conforming to the solicitation will be most advantageous to the Government....") (emphasis added); Rec. 97 ("The Government intends to evaluate proposals and award *a* contract without discussions with offerors....") (emphasis added); Rec. 101 ("The Government intends to make *a single award* to *the* technically˗acceptable, responsible *offeror* proposing the lowest price for all items.") (emphasis added).

The contract that the Navy proposes to award to CC is not the contract contemplated by the 1992 solicitation because that contract already has been awarded to, and, moreover, fully performed (including at least one additional option period not required by the solicitation) by, CDS.

■ The Navy's failure to exercise one or more option years under CDS's contract does not constitute a breach of the terms of the 1992 solicitation because the option, as the very name suggests, is not a mandatory contract requirement. Even if CDS claimed that the Navy's non-renewal breached the contract awarded to CDS pursuant to that solicitation, this court would have no jurisdiction, because this would be a post-award dispute, which may not be brought to this court because CDS has not submitted a claim to the contracting officer that has been denied or deemed denied, 41 U.S.C. § 605; *Paragon Energy Corp. v. United States,* 645 F.2d 966, 976, 227 Ct.Cl. 176 (1981), and because this court has no equitable powers over post-award disputes, under 28 U.S.C. § 1491(a)(3) or any other source of authority.

■ In any event, the contract CDS protests and means to enjoin by this action is the one the Navy proposes to award to CC, and not the one CDS is currently performing. Furthermore, with the Navy's apparent concurrence,[11] CDS already has succeeded,

11. The Department of Justice appears, in this case, to represent only the position of the Navy,

which favors contract award to CDS because it

by filing this action, at holding up the planned award to CC, and at avoiding the termination (or non-renewal) of its existing contract. Thus, in effect, CDS already has obtained post-award injunctive relief as a result of bringing its action in this court.

### Conclusion

The parties having provided no evidence of a new solicitation or of any new bids to perform the contract the Navy has proposed to award to CC, the court concludes that there are no pre-award "bidders" to whom the Navy owes a duty of fair consideration, including CDS, and thus that there is no implied contract with CDS giving this court jurisdiction over its complaint under 28 U.S.C. § 1491(a)(3).[12]

The Clerk of the Court is ordered to dismiss the complaint.

considers CC to be technically incapable of performing.

12. CC, as a bidder under the 1992 solicitation, could have invoked this court's jurisdiction to enjoin award of the original contract to CDS. After award of the contract to CDS, and during the term of CDS's contract, CC's only legal recourse, other than a protest within 10 days to the GAO, which it abandoned before obtaining a decision on the CoC, would have been a suit against the Navy in a federal district court, *e.g.,* pursuant to that court's review authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06. *See, e.g., John C. Grimberg Co.,* 702 F.2d at 1377. This court has no such APA authority. *Katz,* 16 F.3d at 1209.