**OAKLAND STEEL CORPORATION,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–762C.

United States Court of Federal Claims.

June 30, 1995.

Mary Beth Bosco, Washington, DC, for plaintiff. William E. Slade, Christy L. Gherlein, Patton Boggs, L.L.P., of counsel.

Ross D. Cooper, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, Director, and James M. Kinsella, Asst. Director, for defendant. Timothy Lasko, Naval Air Warfare Center, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1). For the reasons set forth below, the court grants defendant's motion.

## FACTS

On January 20, 1984, the United States Navy awarded Contract No. N–00140–84–C–1985 to Bay Area Crane–Hoist Company (Bay Area). The contract called for Bay Area to manufacture and supply the United States Navy with support weldments, which the Navy would later use in the construction of aircraft catapults. Bay Area alleged that the design specifications in the contract were defective and, as a result, that it incurred extra costs and was delayed in performing the contract. Bay Area completed performance of the contract in 1985, approximately nine months after the originally scheduled completion date.

On February 26, 1986, Bay Area assigned its rights to the proceeds under the contract to Golden State Sanwa Bank (Sanwa). This assignment entitled Sanwa to receive all money then due or thereafter to become due on Bay Area's contract with the United States Navy.

On December 11, 1986, Bay Area submitted a claim under the contract to the Navy's contracting officer. Because the claim lacked supporting documentation, the claim

was not processed. Bay Area treated the refusal as a denial of the claim and appealed the decision to the Armed Services Board of Contract Appeals (ASBCA). The ASBCA dismissed the appeal on September 29, 1989, without prejudice, because Bay Area failed to certify its claim to the contracting officer as required by the Contract Disputes Act of 1978, 41 U.S.C. § 601 (1987).

Bay Area filed a petition for bankruptcy protection on July 31, 1987, two months prior to filing its appeal to ASBCA. Sanwa subsequently filed a claim in the bankruptcy proceeding as a creditor with a duly perfected security interest in Bay Area's assets. During the course of the bankruptcy proceedings, Sanwa assigned its bankruptcy claim to Oakland Steel Corporation in consideration of $125,000. On November 21, 1991, the bankruptcy court approved the assignment and sale of Sanwa's bankruptcy claim to Oakland Steel, thereby substituting Oakland Steel as claimant against Bay Area. The bankruptcy court, however, refused to make any determination as to the validity, extent, priority, or status of Oakland Steel's bankruptcy claim. In short, the bankruptcy court approved the assignment and sale without commenting on the substantive nature of the transaction itself.

On June 23, 1993, Oakland Steel submitted a claim under the contract originally entered into and performed by Bay Area. The contracting officer issued a final decision on October 21, 1993, denying Oakland Steel's claim on grounds that the reassignment to Oakland Steel did not constitute a valid assignment under the Assignment of Claims Act. Plaintiff then filed this suit on October 19, 1994.

## DISCUSSION

### I. *Motion to Dismiss*

 In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-moving party. *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988). When disputed facts relevant to the issue of jurisdiction exist, the court may

decide those questions of fact. *Id.; Hedman v. United States,* 15 Cl.Ct. 304, 306 (1988). When subject matter jurisdiction is questioned, the non-moving party bears the burden of establishing the court's jurisdiction. *Reynolds,* 846 F.2d at 748.

Defendant proffered three arguments in support of its motion to dismiss: (1) this court lacks subject matter jurisdiction; (2) plaintiff's claim is barred by the Tucker Act statute of limitations, 28 U.S.C. § 2501; and (3) plaintiff's assignment from Sanwa violated the Assignment of Claims Act, 31 U.S.C. § 3727, and the Assignment of Contracts Act, 41 U.S.C. § 15, collectively known as the Anti–Assignment Acts (the Acts). A common thread running through each argument was the issue of privity. The question of whether Oakland Steel was in privity of contract with the United States Navy and Oakland Steel therefore disposes of this case. Because the court finds that no such relationship existed, defendant's motion to dismiss is granted.

### II. *Subject Matter Jurisdiction*

 The Tucker Act defines this court's jurisdiction. 28 U.S.C. § 1491. The Tucker Act does not in and of itself create a substantive right to recover money but instead waives the United States sovereign immunity under specific conditions. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Courts have consistently recognized privity of contract as a prerequisite to maintaining a Tucker Act suit against the government. *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984). *Thomas Funding Corp. v. United States,* 15 Cl.Ct. 495, 499 (1988). Only parties that have formed an express or implied contract with the government may bring suit under the Tucker Act. *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550 (Fed.Cir.1983). Thus, subcontractors are not in privity with the government and may not bring a direct action for contract infringement. *Id.* at 1550. This rule applies equally to assignees of a contract: "the distinction [between subcontractors and assignees] is without a significant difference." *Thomas Funding,* 15 Cl.Ct. at 499. Conse-

614

quently, assignees have "only a limited interest in the financing aspects of the contract, not the performance aspects." *Produce Factors Corp. v. United States*, 199 Ct.Cl. 572, 581, 467 F.2d 1343 (1972). In a situation where there is no privity, "an assignee under such circumstances may only bring a suit against the government for wrongful payment to a third party, and may not maintain an action for breach of contract in this court." *Thomas Funding*, 15 Cl.Ct. at 502.

■ Oakland Steel did not deny that privity was a prerequisite to bringing a contract suit against the United States. Rather, Oakland Steel argued that it qualified for an exception to the Assignment of Claims Act of 1940, thereby obviating the need for privity of contract with the United States to proceed with this suit. Because it received the claim against the government through a bankruptcy proceeding and, therefore, "by operation of law," Oakland Steel contended it should be excused from having privity of contract to maintain its suit against the United States. In support of this plaintiff relied heavily on *Keydata Corp. v. United States*, 205 Ct.Cl. 467, 504 F.2d 1115 (1974).

In *Keydata*, the government and Keydata leased space from the same lessor, Wyman. Keydata notified Wyman it was leaving, and the government, seeking to expand, agreed to lease the space Keydata was vacating. The government agreed to pay Wyman $39,000 for leasehold improvements made by Keydata, provided that Keydata vacated the premises by a certain date. Wyman, in turn, agreed to pay Keydata $39,000 upon vacating the premises. When Keydata did not vacate in time, the government rescinded its offer and Wyman refused to pay Keydata the $39,000. Keydata brought suit against Wyman, and the Superior Court of the County of Suffolk, Massachusetts ordered Wyman to assign its rights against the government to Keydata. *Id.* at 472, 504 F.2d 1115. Keydata then sued the government in the Court of Claims, which allowed Keydata to pursue its claim against the government despite the fact that Keydata was never in privity of contract with the government. *Id.* at 472, 479, 504 F.2d 1115. The *Keydata* court recognized that "the court-ordered assignment

will not increase the number of parties with whom the Government must deal ... Keydata, not Wyman, is basically, if not technically, the real party in interest; Wyman is involved as a conduit more than anything else." *Id.* at 475, 504 F.2d 1115. The government, throughout the formation of the contract, had full knowledge that Keydata was the intended third-party beneficiary.

In the instant case, however, neither defendant nor Bay Area even knew of plaintiff's existence when they contracted for the support weldments. Oakland Steel received its assignment from Sanwa incident to a bankruptcy proceeding, but Oakland Steel never figured into the original contract scheme at all. *Keydata* involved unique circumstances in which the assignee was closely involved in the performance of the contract. Again, "[t]he improvements clearly belonged to Keydata, and it was natural that Keydata would be the one to be compensated if the Government, as successor tenant, were to enjoy their use." *Id.* at 476, 504 F.2d 1115. Here, Oakland Steel was in no way involved with the performance of the contract. Plaintiff received its assignment in 1991, years after Bay Area completed performance of the contract in 1985. The peculiar relationship between the parties that excused the privity requirement in *Keydata* distinguishes that case from the one before this court. No such relationship between Oakland Steel and the United States Navy existed here. Privity of contract with the government did not attach to Oakland Steel in the transfer of the contract. Without privity, Oakland Steel's only possible cause of action against the government could be for misdirection of payment to a third party. Plaintiff does not allege such an action; therefore, plaintiff has no basis for suit here.

Because plaintiff lacks privity of contract with the United States Navy, this court is without jurisdiction to consider the allegations set forth by plaintiff in its complaint.

### III. *Statute of Limitations*

■ This case was also filed outside of the period of limitations. In order to fall within the jurisdiction of the Court of Federal Claims, a claimant must file within the

applicable statute of limitations. *Soriano v. United States,* 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *D'Andrea v. United States,* 27 Fed.Cl. 612, 614, *aff'd* 6 F.3d 786 (Fed.Cir.1993). The two statutes of limitations at issue here are those contained in the Tucker Act and the Contract Disputes Act. Under the Tucker Act, a plaintiff has six years to file suit after a claim first accrues. 28 U.S.C. § 2501. The Contract Disputes Act, however, allows a "contractor," as defined by the statute, twelve months after receiving a contracting officer's final decision within which to timely file suit. 41 U.S.C. § 609(a)(3).

Plaintiff argued that the governing statute of limitations came from the Contract Disputes Act (CDA). Specifically, plaintiff asserted that it timely filed suit in the Court of Federal Claims within one year of the Navy contracting officer's final decision. The contracting officer issued his final decision on October 21, 1993, and plaintiff filed this suit on October 19, 1994. Defendant responded, however, that the statute of limitations plaintiff relied on applied to "contractors" only as defined by CDA § 601(4). Because plaintiff was not a "contractor," the statute of limitations under the CDA did not apply. Rather, the six-year statute of limitations under the Tucker Act controlled. Plaintiff should have filed suit by 1991, six years after complete performance of the contract. Thus, defendant argued, the Tucker Act limitation barred plaintiff's suit here.

The CDA defines a "contractor" as "a party to a Government contract other than the Government." 41 U.S.C. § 601(4). This is in essence a rephrasing of the privity issue; *i.e.,* whether Oakland Steel stands as a legitimate substitute for Bay Area with respect to assigned claims against the government. Plaintiff argued that the CDA statute of limitations superseded that of the Tucker Act. However, plaintiff failed to address why the limitations period under the CDA applied to it specifically; in short, why it qualified as a "contractor" under the CDA. Apparently, plaintiff relied on its earlier position that, as an assignee of Bay Area, it essentially stood in Bay Area's shoes for purposes of the CDA.

The court in *Thomas Funding* was clear on this very point.

[T]he requirement of privity of contract must be shown for all parties attempting to maintain a suit as a contractor against the government under the Contract Disputes Act of 1978. In short, the basic tenet of government contract law that the government consents to be sued only by those (*i.e.,* a contractor) with whom it has privity of contract, although exceptions exist within very limited circumstances, is emphatically embodied in the Contract Disputes Act.

*Thomas Funding,* 15 Cl.Ct. at 501 (citations omitted). In that case, the contractor assigned the proceeds of the contract to Thomas Funding Corp., a financing institution. Thomas Funding was not a party to the original contract between the contractor and the government nor was the government a party to the assignment between the contractor and Thomas Funding. A similar factual relationship between the parties existed in this case. The original contract involved only Bay Area and defendant; the assignment to plaintiff did not involve defendant at all. "Thus, under no hypothesis can it be said that plaintiff herein was in privity with the United States under either contract." *Id.* Without such privity, the Tucker Act's statute of limitations remains the applicable one. Plaintiff, therefore, did not timely file its suit.

### IV. *Validity of Plaintiff's Assignment under Anti–Assignment Acts*

Oakland Steel argued that its assignment of a claim against the government constituted a valid assignment despite the general prohibition against assigning claims or contracts against the government established by the Acts. Because the court has already found that it is without jurisdiction in this matter and plaintiff's suit is untimely, it need not reach the question of the validity of the assignment.

### CONCLUSION

The court finds that it does not have jurisdiction over this case. Plaintiff did not have privity of contract with defendant to maintain

suit under the Tucker Act, and the suit was not timely filed. Defendant's motion to dismiss is granted.

**IT IS SO ORDERED.**